## 43557. WESTBROOK v. THE STATE.
(353 SE2d 504)

SMITH, Justice.

This is the second appearance of this death penalty case. Johnny Mack Westbrook and Eddie William Finney were convicted in separate trials for the murder and kidnapping of two elderly women, and sentenced to death. *Finney v. State*, 242 Ga. 582 (250 SE2d 388) (1978); *Westbrook v. State*, 242 Ga. 151 (249 SE2d 524) (1978). Both defendants were granted habeas relief by the United States Court of Appeals, Eleventh Circuit. *Finney v. Zant*, 709 F2d 643 (11th Cir. 1983); *Westbrook v. Zant*, 704 F2d 1487 (11th Cir. 1983); *Westbrook v. Zant*, 743 F2d 764 (11th Cir. 1984). Finney was retried as to sentence and the resulting death sentence was affirmed in *Finney v. State*, 253 Ga. 346 (320 SE2d 147) (1984). Now Westbrook, who was retried on the question of guilt and sentence, has been re-convicted and sentenced to death.[1] For reasons which follow, we affirm the con-

---

[1] The defendant was sentenced on March 29, 1985. He filed a motion for new trial on

viction but reverse the death sentence.

## The Guilt-Innocence Phase

1. Westbrook was charged with and convicted on two counts each of murder and kidnapping with bodily injury. The facts are essentially as set forth in *Westbrook v. State,* supra, and the evidence supports the convictions. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. After a lunch break during the guilt phase of the trial, the trial court made a few remarks to the jury while awaiting the return of the defendant. These comments were not recorded; however, after the defendant raised the issue of a possible violation of OCGA §§ 5-6-41 and 17-8-5, the trial judge restated his comments, as well as he could remember them, into the record, relating that he had told the jury that the trial would be slightly delayed because the defendant had eaten late, and had congratulated one of the jurors for having been elected to the board of education.

Contrary to the defendant's sixth enumeration of error, we find no violation of OCGA §§ 5-6-41 or 17-8-5. See OCGA § 5-6-41 (d). Any possible constitutional error relating to a defendant's right to be present during all the stages of his trial is clearly harmless beyond a reasonable doubt. See, e.g., *United States v. Toliver,* 541 F2d 958, 964-65 (2nd Cir. 1976).

3. A *Jackson-Denno* hearing was conducted, and the trial court's findings of voluntariness are supported by the evidence. Enumeration 7 is without merit.

4. The trial court did not err by refusing to excuse prospective juror O'Rourke, see *Waters v. State,* 248 Ga. 355 (2) (283 SE2d 238) (1981), or by death-qualifying the jury. *Pope v. State,* 256 Ga. 195 (7a) (345 SE2d 831) (1986). Enumerations 9 and 10 are without merit.

## The Sentencing Phase

5. Evidence was presented at the sentencing phase of the trial that Westbrook can accurately be described as an imbecile. The defense psychologist testified that such persons will "never take social rules and regulations and apply them . . . because their reasoning just isn't there." He testified, "it's sort of like . . . a cow getting out . . . [Y]ou may take a . . . tree and knock the cow in the head and get it back in, but tomorrow the cow's liable to be out again." He also

---

April 19, 1985, and an amendment thereto on September 1985. The motion was heard September 4, 1985, and denied February 20, 1986. A notice of appeal was duly filed and the case was docketed in this court on May 29, 1986. The case was orally argued September 9, 1986.

compared the defendant to a car with no steering wheel: "Now you can take a human organism and you can put his bones together well, and his muscles function well, but if he doesn't have a mental driving wheel up there, you can expect his behavior to go all over the road and in the ditch and across the field . . . And you . . . can hardly blame an individual . . . [who lacks] a good mental steering wheel."

The state's psychologist described the defendant's intelligence as "borderline" and testified that some of the tests administered to the defendant, as well as his behavior, suggest an organic brain disorder.

It was shown that when Westbrook was 14, he was convicted of several burglaries, involving the theft of some $300 worth of property, and was given an indeterminate sentence of 59 to 118 years. He was sent to prison, where he remained for 20 years before being paroled.

The state conceded in its closing argument that the defendant had been "treated harshly." The defense argued that Westbrook had been uncritically following the lead of co-defendant Finney when they committed the crime, and that his maladaptive behavior was the result of mental retardation combined with a long confinement in prison from an early age. The defense contended that Westbrook needed a restrictive environment, not electrocution, and asked the jury to "recommend two life sentences for the remainder of his natural life."

In its instructions to the jury on the possible forms of the verdict the court told the jurors that if they found one or more statutory aggravating circumstances to exist, but did not recommend death, they would state, "we recommend mercy or that the defendant's punishment be life imprisonment."

The jury began its deliberations, and sometime thereafter sent the court these questions: "Can we give the sentence of life without chance of parole? If no, when will the defendant be eligible for parole?" The court refused to give the defendant's requested response that the jury "should give no consideration to the issue of parole in reaching [its] decision," and instead replied to the jury: "The judge is not permitted to answer either of these two questions."[2]

Soon, the jury reported that it had reached a unanimous verdict. It was, on each count of murder, that "we recommend mercy or that defendant's punishment be life imprisonment with the stipulation that it be life without parole."

After a sidebar discussion with the attorneys, the court stated: "Ladies and gentlemen of the jury, I cannot accept this verdict in the

---

[2] For a case addressing an error also resulting from a jury's request for instructions concerning whether it could recommend life without parole, see *Quick v. State*, 256 Ga. 780 (9) (353 SE2d 497) (1987). In particular, see fn. 3, at 787, for a suggested jury instruction concerning this issue.

form that it is. It is not one of the authorized forms of the verdict submitted to you to be rendered in this case. So, I will hand this back . . . and ask you to go back into your jury room and continue your deliberations."

Soon, the jury again reached a verdict, recommending life imprisonment on one of the murder counts, and death on the other.

The defendant contends here, as he did below, that the jury's original verdict should have been accepted. We agree.

"Verdicts are to have a reasonable intendment, are to receive a reasonable construction, and are not to be avoided unless from necessity." OCGA § 17-9-2.

Where "the verdict rendered by the jury . . . [is] so uncertain and ambiguous that the true finding of the jury [cannot] be ascertained, it [is] proper for the trial judge to refuse to receive such a verdict and return them to their room for further deliberation." *Campbell v. State*, 50 Ga. App. 171, 176 (177 SE 517) (1934). But where the meaning of the verdict is clear, when "construed in the light of the issues actually submitted to the jury under the charge of the court," it is to be "upheld as legal." *Barbour v. State*, 8 Ga. App. 27, 28 (68 SE 458) (1910).

In this case, the issues submitted to the jury were whether or not the state had proven any statutory aggravating circumstances, and, if so, whether to recommend death or to recommend mercy. The defendant's parole eligibility was not, and by law should not have been, an issue. See OCGA § 17-8-76.

In *Cain v. State*, 53 Ga. App. 331 (185 SE 615) (1936), the jury returned a verdict finding the defendant guilty of involuntary manslaughter and recommending "that he be punished as for a misdemeanor." The Court of Appeals considered and found meritless the defendant's claim that the verdict was void, saying: "[F]or no reason should this court hold the verdict void because the jury recommended that [the defendant] be punished as for a misdemeanor, which was not within their power to do. This may be treated as surplusage . . . . We do not see that the addition by the jury in their verdict, as was done here, of unnecessary verbiage, renders the verdict any less clear than had their verdict been one of 'guilty.'" Id. at 333.

In the instant case, the jury's verdict was clear, and its "stipulation" regarding parole was mere surplusage not affecting its recommendation of mercy.

"Where a statutory aggravating circumstance is found and a recommendation of death is made, the court shall sentence the defendant to death. Where a sentence of death is not recommended by the jury, the court shall sentence the defendant to imprisonment as provided by law." OCGA § 17-10-31.

Westbrook's jury unanimously agreed to recommend mercy. A

sentence of death was not recommended. The jury's verdict was, in effect, an "acquittal" on the question of a death sentence. *Bullington v. Missouri*, 451 U. S. 430 (101 SC 1852, 68 LE2d 270) (1981). " 'Whatever errors may have been made by the jury in the application of the law, or however perversely they may have acted, and in defiance of the plain and positive instructions of the court, their verdict of acquittal in a criminal case is final. The court can not set it aside for any error of law, or any disregard of the evidence.' " *Register v. State*, 10 Ga. App. 623, 630 (74 SE 429) (1911).

The sentence of death must be reversed and remanded for the imposition of a life sentence.[3] The remaining enumerations of error, relating only to the sentencing phase of the trial, need not be addressed.

*Judgment affirmed in part, reversed in part. All the Justices concur.*

DECIDED MARCH 12, 1987.

*Mathis & Choates, Charles A. Mathis, Jr.,* for appellant.
*Joseph H. Briley, District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General,* for appellee.

---

[3] We note that the defendant is now 50 years old, and that under OCGA § 42-9-39 (c), the defendant will not be eligible for consideration of parole until he has served 30 years of the sentences imposed in this case.