## 77623. CABLE v. THE STATE.
### (380 SE2d 715)

DEEN, Presiding Judge.

John Cable was indicted and tried on charges that on February 6, 1987, he and Claude Barnes entered the City Hall of the City of Young Harris with the intent to commit a felony, that he and Barnes set fire to the building, and that he and Barnes thereafter set fire to a vacant home known as the Coleman house. Cable was also indicted and tried on the charge that on March 11, 1987, he and Barnes again set fire to the Coleman house. Cable was convicted on the one count of burglary and the three counts of arson and he appeals.

At trial, the State introduced the testimony of Barnes, appellant's accomplice. Barnes, who stated that due to a brain tumor operation he could neither read nor write and had completed only five grades at school, testified that after having drunk a *gallon of corn liquor over the course of the day* and consumed two or three bottles of wine *plus about a case of beer* the evening of February 5, 1987, he agreed in response to appellant's repeated suggestions to set fire to the Young Harris City Hall. Barnes stated that appellant was upset because the city was putting him out of the canning business. Barnes testified that appellant showed him a barrel of gasoline behind appellant's home, which Barnes used to fill a yellow jug, then appellant drove him to a motel near the city hall. Barnes walked the rest of the way, broke out a window, and set fire to the building around 2:00 a.m. on the morning of February 6. He then walked back to appellant's home. Barnes testified that appellant then suggested Barnes set fire to the Coleman house, an unoccupied residence some 40 to 50 yards from appellant's house. Barnes testified he carried gas in a milk jug and set fire to the structure around 5:00 a.m. on February 6 while appellant stood outside by a street lamp and waited for the fire department to arrive. The Coleman home was damaged, but not completely destroyed, by the fire.

As to the third arson, Barnes testified that after he had been drinking heavily all day March 10, 1987, he and appellant had a conversation in which appellant told Barnes he had to finish what he had started the time before. Barnes stated appellant told him to get gasoline out of his truck, which Barnes did by siphoning the gas into a five gallon bucket by means of a piece of garden hose cut with tin snips he got from appellant. Barnes stated he was not able to remove the hose from the truck's gasoline tank and left it there. Barnes then walked the 40 to 50 yards to the Coleman house on the morning of March 11, 1987, at approximately 2:00 a.m., and set fire to it. The house burned to the ground.

Mack Garrett, an inmate in the cell next to appellant's, testified that appellant told him that he (appellant) was not worried because

he had enough money to pay off his alibis and "his KKK members were going to back him up when court time came around." Peggy Keys, a councilperson for the City of Young Harris, testified that on the night of February 5, 1987, just before the city hall arson, her husband received a phone call that the KKK was coming to Young Harris and that when appellant attended the council hearing on his petition for rezoning in April 1987, the Ku Klux Klan was there with appellant. Sheriff Rudy Roach testified on direct examination that after appellant had been released on bail, he met appellant on the streets of Young Harris and that appellant "stuck his hand out and said, would you like to shake the hand of the man that brought the Klan to Young Harris, Georgia." *Held*:

1. Cable attacks the sufficiency of the evidence only on the basis that, considering the accomplice's criminal record, alcohol abuse, auditory hallucinations, and black-out episodes, the accomplice's testimony was too *incredible* to support the conviction. Note the distinction between two differing types of alleged "incredible, impossible, or, inherently improbable evidence." *Thornton v. State*, 161 Ga. App. 296, 299 (287 SE2d 749) (1982). Any question as to the credibility of a witness is for the jury to resolve. OCGA § 24-9-80, generally; *Hendrix v. State*, 186 Ga. App. 665 (368 SE2d 181) (1988). The jury apparently resolved that question adversely to Cable, and with the evidence viewed in the light most favorable to upholding the verdict, the evidence authorized a rational trier of fact to find him guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Cable contends that the admission of testimony recounting his remarks about the KKK was error, despite his failure to object to any of the testimony during the trial. During the investigation of the first fires, Cable told a GBI agent that he did not know who was responsible for the fires, but that he had received an anonymous phone call on the evening of the fires indicating that the caller was a member of the KKK and that the KKK ws going to be in Young Harris that night. The testimony recounting Cable's bragging statements about his connection with the KKK was admissible to negate Cable's statement about the anonymous phone call from the KKK. Moreover, Cable's statement to his fellow inmate about the KKK backing him up at court time was admissible as indicative of a consciousness of guilt. *Moon v. State*, 154 Ga. App. 312 (5) (268 SE2d 366) (1980). "[I]f one plays with fire he is likely either to get burned or be caught in a cross fire." *Carver v. State*, 185 Ga. App. 436, 440 (364 SE2d 877) (1987). This admissible evidence was not rendered inadmissible simply because it may have incidentally placed Cable's character into evidence. *Stitt v. State*, 256 Ga. 155 (1) (345 SE2d 578) (1986).

Cable also attacks the admission of a certified copy of a com-

plaint filed by the City of Young Harris against Cable, his wife, and his mother, to enjoin them from carrying on a junk business. This evidence was admissible to demonstrate a motive for arson, and also to corroborate the testimony of Barnes that Cable wanted the city hall burned because the city had put him out of business. Evidence showing motive is admissible even though it may also place the defendant's character in issue. *Causey v. State*, 154 Ga. App. 76 (3) (267 SE2d 475) (1980).

3. Cable's remaining enumerations of error are also without merit.

*Judgment affirmed. Carley, C. J., McMurray, P. J., Banke, P. J., Birdsong, Pope, Benham and Beasley, JJ., concur. Sognier, J., dissents.*

SOGNIER, Judge, dissenting.

" ' "In exceptional circumstances, *especially in criminal cases,* appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings." [Cit.]' [Cits.]" (Emphasis supplied.) *Almond v. State*, 180 Ga. App. 475, 480 (349 SE2d 482) (1986). See also *Taylor v. State*, 186 Ga. App. 113, 114-115 (366 SE2d 422) (1988); *Kearney v. State*, 184 Ga. App. 64, 66 (360 SE2d 633) (1987). The law of this state provides that a defendant in a felony case may not be convicted on the uncorroborated testimony of an accomplice. OCGA § 24-4-8; *Thurston v. State*, 186 Ga. App. 881-882 (1)(368 SE2d 822) (1988). Since there is no evidence insofar as the participation and identity of the accused is concerned, to connect the accused with the crime independent of the accomplice's testimony, *West v. State*, 232 Ga. 861, 865 (2)(209 SE2d 195) (1974), I dissent.

DECIDED MARCH 6, 1989 —
REHEARING DENIED MARCH 27, 1989.

*Holley & Holley, William P. Holley III*, for appellant.
*Michael D. Crawford, District Attorney*, for appellee.