S96P1266. MCCLAIN v. THE STATE.
(477 SE2d 814)

</div>

SEARS, Justice.

The appellant, Mark Howard McClain, shot and killed Kevin Scott Brown during an armed robbery of a Domino's Pizza store in Augusta.[1] The jury sentenced McClain to death for murder, finding

---

[1] The crimes occurred on November 20, 1994. McClain was indicted on November 29, 1994, for malice murder, felony murder, armed robbery, possession of a firearm during the commission of certain crimes and possession of a firearm by a convicted felon. McClain was reindicted for the original charges, with the addition of burglary, on January 4, 1995. On September 7, 1995, the jury found McClain guilty on all counts except possession of a firearm by a convicted felon, which count was not initially tried with the others. McClain subsequently pled guilty to possession of a firearm by a convicted felon. On September 15, 1995, McClain was sentenced to death for murder, twenty years consecutive for burglary, a consecutive life sentence for armed robbery, five years consecutive for possession of a firearm

the following statutory aggravating circumstances: The murder was committed while the offender was engaged in the commission of a burglary; the murder was committed while the offender was engaged in the commission of an armed robbery; and the murder was committed for the purpose of receiving money or things of monetary value.[2]

The state presented evidence that McClain picked up his girl friend, Tina Butler, around midnight on November 19, 1994, and drove to her apartment. They discussed their relationship over a few drinks, and Butler told McClain she needed money. An hour later, McClain left Butler's apartment, drove to the Domino's Pizza store on Washington Road and parked his blue Buick beside the building. Shortly before 2:00 a.m., Domino's delivery man, Phillip Weeks, returned from making his pizza deliveries. McClain approached Weeks as he was walking toward the store and asked to buy a pizza. Weeks told him the store was closed, but McClain became insistent and refused to leave. In an attempt to placate McClain, Weeks agreed to ask the manager, Kevin Brown, who was inside the store, to make an exception. Weeks began yelling to Brown from outside the store. Brown looked at Weeks, whose hand was on the door, and released the security lock. As the door opened, McClain attempted to force his way inside behind Weeks. Weeks sought to bar him from entering, but when McClain produced a small caliber revolver, Weeks fled through the store and out the back door. Brown, who weighed 450 pounds and could not move quickly, remained standing behind the counter. As Weeks reached the door, he heard McClain order Brown to give him the money.

Weeks fled to a service center on Washington Road to call police, but the pay telephone was broken. Before crossing the road, Weeks looked around and saw a blue car pull out of the driveway leading to Domino's at high speed. Believing the driver of the car to be the perpetrator, Weeks ran back to the sidewalk. McClain saw Weeks and made an obscene gesture towards him with his middle finger as he drove by. Weeks ran into the road behind the car and memorized the car's tag number. Weeks flagged down a passing driver, who drove him back to the store. Brown, who had been shot, was lying behind the counter, barely alive. Brown's keys to the store's till, which he normally kept in his pocket, were in the till where the store's money was kept. There was evidence that just over $100 was missing from

---

during the commission of a crime and five years consecutive for possession of a firearm by a convicted felon. McClain filed a motion for new trial on September 29, 1995, and amended it on February 27, 1996. The motion was denied on March 5, 1996. McClain's notice of appeal was filed on March 18, 1996. The case was docketed on April 25, 1996, and orally argued on September 26, 1996.

[2] OCGA § 17-10-30 (b) (2) (4).

the store. By the time paramedics arrived, Brown had bled to death from a single gunshot wound to the chest.

McClain returned to Butler's house and gave her $100 without revealing its source. When McClain left Butler's residence the next afternoon, he drove Butler's car, leaving the Buick, the army jacket and boots he had worn during the robbery, and the gun he had used to shoot the victim at her house. Police traced the tag number of the Buick to McClain's father, whose description of his son matched Weeks' description of the perpetrator. The assistant manager at the Washington Road Domino's store identified McClain as having bought a pizza in the store two days before the shooting under the name of Johnson. The box with the receipt for that pizza was found in the trash during a search of McClain's residence.

The day after the shooting, McClain picked up the Buick at Butler's house. He was arrested when he arrived at work in the car the following morning. That evening, McClain called Butler from the jail and told her to dispose of the clothes and gun he had left at her house. He demanded that Butler provide him with an alibi for the night of the shooting and threatened to implicate her if she refused. Butler hid the jacket in a neighbor's shed and gave the gun to her nephew. The police questioned Butler on two occasions, and during the second interview, she told police about McClain's telephone call and gave police the jacket and boots. The gun was recovered a month later, when Butler's nephew was involved in a shooting. Butler testified against McClain at trial. McClain denied any involvement in the crime until trial, where he testified that he intended only to rob the store, but heard a noise as he was leaving, and believing that Brown was pursuing him, McClain shot him.

The evidence is sufficient to enable a rational juror to find McClain guilty of the crimes charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

1. McClain's first four enumerations of error challenge the trial court's rulings with regard to the qualifications of four jurors during voir dire.

(a) McClain argues that the trial court erred in relying on prospective juror William L. Platte's assurances that he could be impartial in denying McClain's motion to excuse this juror for cause because Platte's voir dire responses indicated that he was biased in favor of the state. Before a juror can be disqualified for cause, it must be shown that the juror has formed an opinion on the guilt or innocence of the accused which is " 'so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence.' " *Garland v. State*, 263 Ga. 495, 496 (435 SE2d 431) (1993); *Johnson v. State*, 262 Ga. 652, 653 (424 SE2d 271) (1993). However, a trial court may

not rely solely on a prospective juror's assurances of his impartiality where the record shows on its face that the juror has a compelling bias or interest in the outcome of the case. *Lively v. State*, 262 Ga. 510, 511 (421 SE2d 528) (1992); *Walker v. State*, 262 Ga. 694, 696 (424 SE2d 782) (1993).

The record does not support McClain's assertion that Platte's responses revealed he was obviously biased. Unlike the prospective jurors in *Lively* and *Walker*, Platte did not have a close relationship with either of the parties or the victim.[3] Moreover, even though factual circumstances strongly in favor of disqualification were absent in Platte's case, the trial court did not rely solely on Platte's own opinion of his ability to be impartial in finding Platte qualified to serve as a juror. After questioning Platte, the trial court articulated reasons for its ruling, specifically addressing the relationship between Platte and the prosecutor, Platte's voir dire responses, and his demeanor. The trial court did not abuse its discretion in denying McClain's motion to disqualify Platte. *Garland*, 263 Ga. at 496.

(b) McClain contends that the trial court erred in failing to remove prospective jurors Charles Penn and Robert Snyder for cause. Since Penn and Snyder qualified forty-third or later in the panel, the issue of whether they were qualified to serve as jurors is moot. *Crowe v. State*, 265 Ga. 582, 588-589 (458 SE2d 799) (1995); *Hittson v. State*, 264 Ga. 682 (449 SE2d 586) (1994); *Pope v. State*, 256 Ga. 195, 202 (345 SE2d 831) (1986).

(c) McClain argues that the trial court erred in excusing prospective juror Louise Head, sua sponte, because her voir dire responses failed to meet the standard for dismissal under *Wainwright v. Witt*, 469 U. S. 412 (105 SC 844, 83 LE2d 841) (1985). The holding in *Witt* is irrelevant to the issue of whether Head's excusal was proper, since Head was excused for good cause under OCGA § 15-12-1 and not for her views on the death penalty. We reject McClain's implicit argument that OCGA § 15-12-1 does not apply in a death penalty case, and the court may only excuse a juror for a "legal reason."

Head testified that her responsibilities as publicity chairman for an upcoming fiftieth anniversary reunion of a worldwide organization might distract her from her duties as a juror and interfere with sequestration. The trial court did not abuse its broad discretion in excusing Head because of her age and responsibilities in preparing

---

[3] The prosecutor probated Platte's father's estate when Platte was six or seven and taught Platte's eighth grade Sunday School class. There had not been any contact between Platte and the prosecutor for eight years prior to McClain's trial. Platte's relationship with law enforcement officers was even more attenuated. Platte testified that he had played softball and occasionally socialized with Richmond County policemen, although he characterized only one of these individuals as a "good friend."

for what was "a one time only event." *Blankenship v. State*, 258 Ga. 43, 44 (365 SE2d 265) (1988). McClain's argument that the court acted in a discriminatory manner in excusing Head but failing to sua sponte excuse prospective juror Platte, because Platte was similarly situated, has no basis in fact or law.

2. McClain contends that the trial court erred in admitting testimony by a Richmond County deputy that McClain stated if he was convicted of Brown's murder he would rather be executed than return to jail. During the guilt phase of trial, Deputy Sheriff Ronnie Strength testified that in a follow-up interview several days after McClain was arrested, Strength informed McClain that police were aware of his incriminating telephone conversation with his girl friend, Tina Butler, in which McClain instructed Butler to dispose of the jacket and boots he wore on the night of the crime and the gun, which he had also left at Butler's house. Although McClain had previously denied any involvement in Brown's murder, after Strength showed him the jacket and boots, McClain stated that if he were found guilty of Brown's murder, he would rather die in the electric chair that day than return to prison. The trial court found McClain's statement to be voluntary and admissible following a *Jackson v. Denno* hearing, and McClain does not challenge its reliability. Cf. *Christenson v. State*, 261 Ga. 80, 91-92 (402 SE2d 41) (1991).

McClain contends that Strength's testimony is prejudicial and inflammatory and is irrelevant to the question of McClain's guilt. We conclude, however, that Strength's testimony was admissible because it can be inferred from McClain's comment that he was implicitly acknowledging that the evidence that Strength summarized for him connected McClain to the crime. Thus, McClain's comment, when considered in the context in which it was given, is, at least implicitly, an admission against interest, and is inconsistent with McClain's earlier statement denying involvement in the crime. OCGA § 24-3-53; *Satterfield v. State*, 256 Ga. 593, 600 (351 SE2d 625) (1987); *Toledo v. State*, 216 Ga. App. 480, 482 (455 SE2d 595) (1995); *Cable v. State*, 191 Ga. App. 46, 47 (380 SE2d 715) (1989). McClain's argument that the admission of this testimony violated the Eighth Amendment by injecting an improper sentencing factor into the proceedings is not a legal justification for excluding reliable and relevant evidence. The jury was entitled to hear this testimony and accord it whatever weight they so chose.

McClain argues that the jury may have relied upon this testimony in determining McClain's sentence. The sentencing hearing does not exclude matters heard in the guilt phase of trial but is for additional evidence. *Ford v. State*, 257 Ga. 461, 463 (360 SE2d 258) (1987). See *Gregg v. Georgia*, 428 U. S. 153 (96 SC 2909, 49 LE2d 859) (1976). "All aspects of his [the defendant's] crime or crimes, his char-

acter and his attitude are admissible, subject to the applicable rules of evidence regarding reliability, to guide the fact finder in determining appropriate sentence." *Fair v. State*, 245 Ga. 868, 871 (268 SE2d 316) (1980); *Lee v. State*, 258 Ga. 82, 85 (365 SE2d 99) (1988). The jury was entitled to consider McClain's voluntary statement in addition to all of the other evidence presented at both stages of trial in deciding what sentence to impose.

3. Enumerations of error six and seven concern the prosecutor's closing argument at the guilt-innocence phase of trial.

(a) McClain asserts that the trial court erred in allowing the prosecutor to make an improper "golden rule" argument, inviting jurors to place themselves in the victim's position, by asking them to consider a day in the future when a housewife opens the door on moving day, and McClain introduces himself as "Mark."[4]

" '[A]ny argument regardless of nomenclature, which importunes the jury to place itself in the position of the victim for any purpose must be carefully scrutinized to ensure that no infringement of the accused's fair trial rights has occurred.' " *White v. State*, 208 Ga. App. 885, 889-890 (432 SE2d 562) (1993), citing *Horne v. State*, 192 Ga. App. 528, 529 (2) (385 SE2d 704) (1989). The argument in this case is ambiguous and does not fit neatly into the "golden rule" category. When an argument is ambiguous, we are reluctant to assume that the prosecutor intended its most damaging meaning. *Hammond v. State*, 260 Ga. 591, 597 (398 SE2d 168) (1990). However, we agree with McClain that the argument constituted an improper reference to McClain's future dangerousness. The issue of a defendant's future dangerousness, although relevant to the jury's sentencing decision, is irrelevant to the question of his guilt.[5] While we disapprove of this portion of the prosecutor's argument, we find that it does not constitute reversible error. Considering the overwhelming evidence of McClain's guilt, we find it highly unlikely that this portion of the argument contributed to the verdict. *Burgess v. State*, 264 Ga. 777, 785 (450 SE2d 680) (1994); *Johnson v. State*, 238 Ga. 59 (230 SE2d 869) (1976); *Horne v. State*, supra at 528.

(b) (1) McClain argues that the prosecutor improperly injected his personal opinion that McClain was guilty of malice murder in closing argument by referring to McClain as a "murderer" who "chose to kill" the victim. Although expressions of personal opinion by the

---

[4] McClain's objection was to arguing facts not in evidence. McClain testified at trial that he was employed by a moving company, and his job entailed packing customers' belongings in their homes.

[5] We note that there was some authority for introducing the issue of a defendant's future dangerousness in guilt stage closing argument at the time this case was tried. *Vance v. State*, 262 Ga. 236 (416 SE2d 516) (1992). This part of *Vance* appears to be an anomaly and has recently been overruled in *Sterling v. State*, 267 Ga. 209 (477 SE2d 807) (1996).

prosecutor are improper in closing argument, the prosecutor has wide latitude to argue inferences from the evidence. *Crowe v. State*, 265 Ga. at 593; *Hill v. State*, 263 Ga. 37, 45 (427 SE2d 770) (1993). The state's evidence showed that McClain fired the gun at a distance of five feet or more from the victim, and there was no indication·that Brown ever moved from behind the counter where he was found shot. Since the state's evidence showed there was no barrier between McClain and the front door to the store, the victim, who was unarmed, could not have presented a threat to McClain, and the reference to McClain as a murderer who chose to kill Brown is a reasonable inference from evidence. See *Todd v. State*, 261 Ga. 766, 768 (410 SE2d 725) (1991); *Ward v. State*, 262 Ga. 293 (417 SE2d 130) (1992).

(b) (2) McClain also contends that the prosecutor argued his personal opinion, thereby invoking his expertise in such matters, by warning the jury "not to be fooled" by McClain, and by concluding, after describing the crime, that "if that's not malice murder I don't know what is. The evidence of malice is as tight as a tick on a dog." Although this arguably was an expression of personal opinion, we do not find it to be an invocation of "the prosecutorial mantle of authority." *Brooks v. Kemp*, 762 F2d 1383, 1413 (11th Cir. 1985), vacated and remanded on other grounds, 478 U. S. 1016 (106 SC 3325, 92 LE2d 732) (1986). Accord *Conner v. State*, 251 Ga. 113, 123 (303 SE2d 266) (1983).

Despite the phraseology, we find that these comments can most reasonably be seen as an attempt to draw inferences from the evidence. *Conklin v. State*, 254 Ga. 558, 571 (331 SE2d 532) (1985). We reach this conclusion because the prosecutor did not compare McClain's case with any other case, the comment was made after the prosecutor outlined the evidence showing McClain's intent, and the remarks were clearly responsive to McClain's argument that the state failed to prove malice. Id. *Cook v. State*, 255 Ga. 565, 575 (340 SE2d 843) (1986); cf. *Hoerner v. State*, 246 Ga. 374 (271 SE2d 458) (1980). When the evidentiary facts supporting a conclusion are cited and the conclusion follows naturally from those facts, the use of personal opinion is unlikely to have a strong impact on the jury's independent evaluation of evidence. *Conklin*, supra. Considering the evidence presented to the jury regarding the brutality of the killing, we find it unlikely that prosecutorial experience or expertise played a discernible role in the jury's evaluation of McClain's intent, and even if objectionable, we do not find this argument to be reversible error.

McClain's contention that the trial court put its "stamp of approval" on this argument is without merit. A judge's remarks assigning a reason for a ruling are neither an improper expression of opinion nor a comment on the evidence. OCGA § 17-8-57; *Crowe v. State*, 265 Ga. at 582. It follows that a trial court's refusal to issue

a curative instruction does not violate OCGA § 17-8-57.

4. (a) McClain objects to the prosecutor's argument on general deterrence during the sentencing phase of trial, in which the prosecutor argued that the jury's verdict would send a message to the community, and asked jurors whether they would like an imaginary billboard at the entrance of Richmond County to read: "Welcome to Richmond County where if you kill our people we find a way to give you a fifth, sixth or seventh chance?" The prosecutor then asked the jury, "Will you have your billboard or the word that goes to the criminals that try to invade your community with that kind of message?" McClain acknowledges that our holdings in *Fleming v. State*, 265 Ga. 541 (458 SE2d 638) (1995) and *Walker v. State*, 254 Ga. 149 (327 SE2d 475) (1985), authorize the state to argue the deterrent effect of the death penalty during the sentencing phase of trial, but contends that the billboard argument is distinguishable from those arguments, because the prosecutor here implied that if the jurors voted for a life sentence, they would be inviting "a criminal invasion."

A prosecutor may appeal to the jury to convict for the safety of the community or to send a message to others that criminal activities will be punished. *Davis v. State*, 266 Ga. 801, 804 (471 SE2d 191) (1996); *Philmore v. State*, 263 Ga. 67, 69 (428 SE2d 329) (1993). The prosecutor may also impress on the jury its responsibility in that regard. Id. Moreover, prosecutors are afforded "considerable latitude in imagery and illustration" in reminding the jury of its responsibilities in enforcing the law. (Citations and punctuation omitted.) *Philmore*, 263 Ga. at 69, citing *Nebbitt v. State*, 187 Ga. App. 265, 268 (370 SE2d 1) (1988). The thrust of the prosecutor's argument was that McClain had previously been convicted of other violent felonies, served prison time for them, and upon his release killed the victim. The prosecutor was entitled to argue that affording McClain an opportunity to commit another violent crime would send the wrong message to others who would engage in criminal activities in Richmond County. *Philmore*, supra.

Although we find that portion of the prosecutor's argument on general deterrence to be proper, we also note that a review of the entire sentencing phase argument alleviates any concern that McClain's sentence was the result of the jury's outrage and fear of criminals in general, and not McClain's individual behavior. The prosecutor argued that by its verdict, the jury was deciding whether McClain, as a result of his own actions, had given up the right to live in a civilized society and asked jurors whether they should subject themselves to his "continuing, criminal, heinous, brutal acts." The prosecutor noted that after three armed robberies, McClain had learned to leave no witnesses, and since he had proved his dangerousness, deserved the most effective punishment. The prosecutor

concluded with a plea to convict McClain by sending a signal to the community that such behavior will not be tolerated. We find that the argument was sufficiently tailored to the individual culpability of McClain, and there is no error on this ground.

(b) McClain's contention that the trial court denied him an opportunity to respond to the state's argument on deterrence is without merit. McClain began his responsive argument by asserting that there was absolutely no dispute that the death penalty is not a deterrent, although there were no facts in evidence to support this conclusion. *Hill v. State*, supra. Moreover, such facts are inadmissible under *Fleming*, which prohibits the introduction of outside evidence on the deterrent effect of the death penalty by either party. 265 Ga. at 541. Although the state objected to arguing facts not in evidence, the trial court did not sustain the objection but cautioned McClain and asked him to proceed. It was McClain's decision to abandon the deterrence argument, stating that he would make a proffer at a later time. Since McClain had the option of proceeding with this argument, but elected not to do so, we find no error on this ground.

5. The trial court's recharge on the meaning of life without parole did not leave jurors to speculate regarding McClain's parole eligibility if convicted of life without parole. The trial court instructed the jury that the "defendant shall be incarcerated for the remainder of his natural life and shall not be eligible for parole." This instruction was proper, and the court was not required, as McClain argues, to respond "that life without parole means what it says." *Henry v. State*, 265 Ga. 732, 741 (462 SE2d 737) (1995). McClain further argues that under settled principles of law, the trial court should have discouraged the jury's consideration of McClain's parole eligibility. *Quick v. State*, 256 Ga. 780, 786 (353 SE2d 497) (1987); *Westbrook v. State*, 256 Ga. 776 (353 SE2d 504) (1987). OCGA § 17-8-76 (a), which prohibits argument on the issue of parole and provided the basis for the holding in *Quick*, supra, has been overruled by OCGA § 17-10-31.1, to the extent that counsel for the state and the accused may present argument on the meaning of life without parole, and the trial court may charge the jury on life without parole. *Jenkins v. State*, 265 Ga. 539, 540 (458 SE2d 477) (1995). McClain's contention that the trial court should have discouraged the jury's consideration of parole is without merit.

6. The trial court did not err in failing to instruct the jury that a unanimous finding on mitigating circumstances is not required, while charging the jury that its sentencing verdict had to be unanimous, since the court charged the jury that it was not necessary for the jury to find any mitigating circumstances to impose a life sentence. *Wellons v. State*, 266 Ga. 77, 89 (463 SE2d 868) (1995); *Ledford v. State*, 264 Ga. 60, 69 (439 SE2d 917) (1994). Contrary to McClain's

contention, the trial court expressly instructed jurors to consider mitigating evidence. *Davis v. State,* 255 Ga. 598, 612 (340 SE2d 869) (1986).

7. McClain argues that the (b) (2) aggravating circumstances of murder in the commission of a burglary and murder in the commission of an armed robbery are duplicative of the (b) (4) circumstance of murder committed for pecuniary gain, because the motive of obtaining money provides the impetus for all three aggravating facts. Aggravating circumstances are not invalid simply because they might overlap to some extent. *Thornton v. State,* 264 Ga. at 578; *Castell v. State,* 250 Ga. 776 (301 SE2d 234) (1983). The (b) (2) circumstances refer to the manner in which the victim was killed, and the (b) (4), the motive for killing.

8. The trial court did not err in failing to charge the jury on a burden of proof with regard to non-statutory aggravating circumstances. *Ross v. State,* 254 Ga. 22, 31 (5) (d) (326 SE2d 194) (1985); *Ward v. State,* 262 Ga. 293 (29) (417 SE2d 130) (1992).

9. The trial court did not err in instructing the jury it could "recommend" the imposition of the death penalty, since the charge made it clear that such a recommendation would be binding. *Hittson v. State,* 264 Ga. at 682.

10. McClain contends that admission of victim impact testimony by the victim's father and the victim's neighbor, Kyle Rondeau, was error on several grounds.

(a) McClain's contention that OCGA § 17-10-1.2, which governs the introduction of victim impact testimony during the sentencing phase of a capital trial, violates the State and Federal Constitutions has been decided adversely to McClain. *Payne v. Tennessee,* 501 U. S. 808 (111 SC 2597, 115 LE2d 720) (1991); *Livingston v. State,* 264 Ga. 402 (444 SE2d 748) (1994).

(b) When asked about the effect of the victim's death on the community, Rondeau responded that the victim's murder was the primary topic of a local radio show in the weeks following the crime and "there was much anger expressed about the crime and the apparent trend." McClain contends that this is unreliable personal opinion testimony which is not supported by any evidence and which exceeds the scope of permissible evidence authorized by OCGA § 17-10-1.2 and *Livingston.* Under OCGA § 17-10-1.2 (b) (6), the trial court has discretion to question witnesses regarding the effect of the victim's death on the community. Although we noted in *Livingston* that even legal victim impact testimony may be inflammatory if admitted in excess, Rondeau's testimony regarding the community's anger about the crime was neither a "detailed narrative of the emotional and economic suffering of the community," nor did it encourage comparative judgments between Kevin Brown's value to the community and that

of another victim. *Livingston*, 264 Ga. at 417, Benham, then Presiding Justice, dissenting. Moreover, we do not find this response was prejudicial to McClain, since in all likelihood, that portion of Rondeau's testimony did not tell the jury anything they did not already know. References to publicity and community anger have been held not to be improper during sentencing phase closing argument because "the jurors are members of the community and would know about community reaction." *Burden v. Zant*, 903 F2d 1352, 1365 (11th Cir. 1990), rev'd on other grounds 498 U. S. 433 (111 SC 862, 112 LE2d 962) (1991). We conclude, however, that Rondeau's testimony that "there was anger in the community about . . . the apparent trend" was improper. Rondeau apparently was referring to anger in the community about increasing lawlessness or crime in general. Such testimony is not permissible victim impact evidence. See § 17-10-1.2 (the court may allow evidence of the impact of the *crime* on the community); *Livingston v. State*, 264 Ga. at 404-405 (victim impact evidence is "limit[ed] . . . to the impact of the offense upon the victim's family or community"). However, considering this abbreviated reference to "the apparent trend" with the remainder of the sentencing phase argument, see Division 4 (a) at 385-386, supra, and with the sentencing phase evidence, we conclude that it was not so prejudicial as to render McClain's sentencing trial fundamentally unfair.

(c) McClain contends that the prosecutor, and not the trial court, read the written questions to Rondeau at trial in violation of OCGA § 17-10-1.2 (b) (6), which states that the court is required to ask the questions authorized by the statute. We find that the procedure followed by the trial court substantially complied with the provisions of the statute, since the questions were previously approved by the trial court. Moreover, failure to comply with the procedure in the Code section does not constitute reversible error absent a constitutional violation. OCGA § 17-10-1.2 (d).

11. The trial court did not err in denying McClain's motion to suppress evidence seized from his residence pursuant to a search warrant, because the warrant affidavit contained no information McClain returned to his residence following the crime, or that the items sought were at the residence. The affidavit contained information from an eyewitness describing the crime, as well as information that the license tag on the car driven by the perpetrator was traced to McClain's father and that McClain had a prior record. The warrant listed boots, clothes and a gun as the items sought in the search. A reviewing court will pay substantial deference to a search warrant finding probable cause issued by a magistrate. *Williams v. State*, 251 Ga. 749, 795 (312 SE2d 40) (1983). An officer's inference that items sought will be at the place to be searched requires no more than "a fair presumption" to be reasonable. *Murphy v. State*, 238 Ga. 725,

727-728 (234 SE2d 911) (1977). We find it reasonable for the officer to infer that McClain returned to his residence after the shooting, which occurred in the early hours of the morning. *Williams*, supra; *Reeves v. State*, 197 Ga. App. 107, 108 (397 SE2d 601) (1990). The trial court's finding of probable cause was not clearly erroneous. *Durden v. State*, 187 Ga. App. 433 (370 SE2d 528) (1988).

12. Contrary to McClain's contention, district attorneys do not have unfettered discretion to seek the death penalty, and the decision to impose it rests with the jury and cannot be upheld absent a finding of an aggravating circumstance. *Crowe v. State*, 265 Ga. at 595. We find no merit to McClain's contention that the trial court erred in denying his motion requesting the prosecutor to produce information regarding cases involving murder and armed robbery or murder and burglary in which the prosecutor did or did not seek the death penalty. See *Jones v. State*, 263 Ga. 904 (3) (440 SE2d 161) (1994).

McClain's sentence is not disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. The similar cases listed in the Appendix support the imposition of the death penalty in this case.

*Judgment affirmed. All the Justices concur.*

APPENDIX.

*Mobley v. State*, 265 Ga. 292 (455 SE2d 61) (1995); *Meders v. State*, 261 Ga. 806 (411 SE2d 491) (1992); *Cargill v. State*, 255 Ga. 616 (340 SE2d 891) (1986); *Davis v. State*, 255 Ga. 588 (340 SE2d 862) (1986); *Wright v. State*, 255 Ga. 109 (335 SE2d 857) (1985); *Dick v. State*, 246 Ga. 697 (273 SE2d 124) (1980); *Amadeo v. State*, 243 Ga. 627 (255 SE2d 718) (1979); *Young v. State*, 237 Ga. 852 (230 SE2d 287) (1976); *Pulliam v. State*, 236 Ga. 460 (224 SE2d 8) (1976); *Gregg v. State*, 233 Ga. 117 (210 SE2d 659) (1974).

DECIDED NOVEMBER 12, 1996 —
RECONSIDERATION DENIED DECEMBER 6, 1996.

*Garrett & Gilliard, Michael C. Garrett, Melissa S. Padgett,* for appellant.

*Daniel J. Craig, District Attorney, Michael J. Bowers, Attorney General, Paige R. Whitaker, Assistant Attorney General,* for appellee.