[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 18, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-13487

_____

D. C. Docket No. 02-00184-CV-LGW

MARK HOWARD MCCLAIN,

                                                    Petitioner-Appellant,

versus

HILTON HALL, Warden,
Georgia Diagnostic and
Classification Prison,

                                                    Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(December 18, 2008)

Before BIRCH, BARKETT and PRYOR, Circuit Judges.

PRYOR, Circuit Judge:

The issue in this appeal is whether the Superior Court of Butts County, Georgia, unreasonably applied clearly established federal law when it ruled that Mark Howard McClain failed to prove ineffective assistance of trial counsel in the investigation of mitigating evidence for the penalty phase of McClain's trial. McClain was sentenced to death for a murder he committed during an armed robbery. Counsel met with McClain between twenty and thirty times before trial, interviewed McClain's father and sister, and secured the help of a mental health expert. In his petition for a writ of habeas corpus, McClain alleged that his trial counsel was ineffective for failing to discover and present mitigating evidence regarding his criminal history, childhood abuse, substance abuse, neurological disorder, and good character. The Georgia court denied McClain's petition because his experienced counsel knew of some of the evidence but reasonably did not pursue it further, counsel reasonably attempted but failed to obtain other evidence, and McClain failed to establish prejudice about any remaining issues. Because that ruling was not objectively unreasonable, we affirm the denial of McClain's petition.

## I. BACKGROUND

At approximately 1:00 a.m. on Sunday, November 20, 1994, McClain left the house of his girlfriend, Tina Butler, drove to a nearby Domino's Pizza store on

2

Washington Road, and parked his blue Buick automobile beside the store. When Philip Martin Weeks Jr., a delivery man, returned to the store before 2:00 a.m., McClain approached Weeks and asked to purchase a pizza. Weeks explained that the store had stopped selling carry-out pizza at 10:00 p.m. the previous evening. McClain protested and refused to leave. To appease McClain, Weeks said that he would ask the manager, Kevin Scott Brown, to make an exception for McClain. McClain began yelling outside the store that he wanted a pizza. Brown released the lock of the door to the store, and Weeks opened the door.

McClain attempted to force his way into the store. Weeks initially struggled with McClain, but when McClain produced a small caliber revolver, Weeks fled through the store and out the back door. Brown, who weighed approximately 450 pounds, remained behind the counter of the store, unable to move quickly. As Weeks left the store, he heard McClain demand that Brown give him money.

Weeks ran to a pay telephone to call the police. After he realized the phone was broken, Weeks ran toward another pay telephone at a gas station across Washington Road. As he began to cross the street, Weeks saw a car leave the Domino's parking lot at a high rate of speed and turn onto Washington Road. The driver, McClain, made eye contact with Weeks and an obscene gesture toward him. Weeks memorized the license tag number of McClain's car. Weeks then flagged

down a passing motorist, who drove Weeks back to the store.

Weeks entered the store and found Brown lying on the floor behind the counter and bleeding from a bullet wound to his chest. The keys to the money till of the store, which Brown ordinarily kept in his pocket, were in the till and approximately $100 was missing. Weeks called 911, but Brown bled to death before paramedics arrived.

Within an hour of leaving Butler's house, McClain returned and gave Butler approximately $100, without explaining where he had obtained the money. McClain spent much of the following day at Butler's house. In the meantime, police traced to McClain's father the license tag number of the car Weeks saw. McClain's father stated that McClain was the primary driver of the car and gave police a description of McClain that matched Weeks's description. The assistant manager of the Domino's store identified McClain as having bought a pizza in the store under the name of Johnson two days before the shooting. The box with the receipt for that pizza was found in the trash during a search of McClain's residence.

McClain was arrested when he arrived at work in his blue Buick the following Monday morning, November 21, 1994. McClain called Butler from the jail that evening and told her to dispose of the clothes, boots, and gun that he had

4

left at her house. McClain also demanded that Butler provide him with an alibi for the night of the shooting and threatened to implicate Butler and her family if she refused to help him. In response to McClain's request, Butler hid McClain's jacket in a neighbor's shed and gave McClain's gun to her nephew.

The police questioned Butler, who eventually told the police about McClain's telephone call to her and gave police McClain's jacket and boots. McClain's gun was recovered a month later when Butler's nephew was involved in a shooting. Butler testified against McClain at trial. McClain denied any involvement in the crime until trial, when he testified that he had intended only to rob the store. McClain testified that he shot Brown when he heard a noise as he was leaving the store and believed Brown was pursuing him.

McClain was convicted of murder, armed robbery, burglary, and possession of a firearm during the commission of certain crimes. McClain v. State, 267 Ga. 378, 379 n.1, 477 S.E.2d 814, 818 n.1 (1996). He later pleaded guilty to possession of a firearm by a convicted felon. Id. The jury sentenced McClain to death for the murder and found three statutory aggravating circumstances: the murder was committed during the commission of a burglary; the murder was committed during the commission of an armed robbery; "and the murder was committed for the purpose of receiving money or things of monetary value." Id. at

379, 477 S.E.2d at 818–19. The Supreme Court of Georgia affirmed McClain's conviction and sentence, id. at 388, 477 S.E.2d at 826, and the Supreme Court of the United States denied certiorari. McClain v. Georgia, 521 U.S. 1106, 117 S. Ct. 2485 (1997).

McClain filed a petition for a writ of habeas corpus in the Superior Court of Butts County, Georgia, and attacked his sentence on numerous grounds, including ineffectiveness of trial counsel. After conducting an evidentiary hearing, the state court denied habeas relief. The court identified Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), as the controlling precedent and determined that McClain's claim of ineffective assistance failed either or both parts of the Strickland test. The Supreme Court of Georgia denied McClain's application for a certificate of probable cause to appeal and the Supreme Court of the United States again denied certiorari. McClain v. Head, 537 U.S. 1033, 123 S. Ct. 565 (2002).

On November 1, 2002, McClain filed a petition for a writ of habeas corpus in a federal district court. See 28 U.S.C. § 2254. The district court, in a careful and well-reasoned opinion, denied McClain's petition and request for a certificate of appealability. We granted McClain's request for a certificate of appealability on one issue: whether McClain's trial counsel rendered ineffective assistance in his investigation of mitigating evidence for the penalty phase of the trial.

6

## II. STANDARDS OF REVIEW

McClain's petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996, which establishes a "general framework of substantial deference" for reviewing "every issue that the state courts have decided[.]" Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1141 (11th Cir. 2005). Unless the decision of the Georgia court "'(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court,'" we will not disturb that decision. Crowe v. Hall, 490 F.3d 840, 844 (11th Cir. 2007) (quoting 28 U.S.C. § 2254(d)). Findings of fact by the Georgia court are presumed correct, and McClain bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Crowe, 490 F.3d at 844.

## III. DISCUSSION

As the Georgia court correctly concluded, Strickland v. Washington governs McClain's claims of ineffective assistance of counsel. We must decide whether the Georgia court unreasonably applied Strickland when it ruled that McClain failed to prove ineffective assistance of counsel in the investigation of mitigating evidence for the penalty phase of McClain's trial. To prevail, McClain

must establish not that the Georgia court applied Strickland incorrectly, but that its decision was objectively unreasonable. Bell v. Cone, 535 U.S. 685, 698–99, 122 S. Ct. 1843, 1852 (2002).

To prove ineffective assistance of counsel under Strickland, McClain "must show that: (1) counsel's performance was deficient because it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense." Stewart v. Sec'y, Dep't of Corr., 476 F.3d 1193, 1209 (11th Cir. 2007). "Courts conduct a highly deferential review of counsel's performance and indulge the strong presumption that counsel's performance was reasonable . . . ." Id. (internal quotation marks omitted). This presumption is especially strong in this appeal because McClain's lead counsel had practiced as a criminal defense lawyer for more than twenty years and had served as counsel in over one hundred murder cases, ten of which were capital cases.

To rebut the strong presumption that counsel's performance was reasonable, McClain "must establish that no competent counsel would have taken the action that his counsel did take." Id. (internal quotation marks omitted). "In considering claims that counsel was ineffective at the penalty phase of trial, we determine whether counsel reasonably investigated possible mitigating factors and made a reasonable effort to present mitigating evidence to the sentencing court." Id.

8

(internal quotation marks omitted). To establish prejudice under Strickland, McClain must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. We may decline to decide whether the performance of counsel was deficient if we are convinced that McClain was not prejudiced. Id. at 697, 104 S. Ct. at 2069.

McClain raises two kinds of arguments. He presents several arguments that were addressed first by the Georgia court. McClain argues that his trial counsel was ineffective for failing to discover and present mitigating evidence of McClain's role in two previous robberies, which was used as aggravating evidence by the prosecution, and evidence of McClain's childhood abuse, substance abuse, neurological disorder, and good character. These arguments fail because the decision of the Georgia court about these issues was not objectively unreasonable. McClain also argues, for the first time, that his trial counsel was ineffective for failing to discover and present mitigating evidence that Butler instigated the robbery and that Butler and her nephew testified in exchange for a grant of immunity, but this argument is outside the scope of the certificate of appealability.

9

Our discussion is divided in six parts. We review the conclusions of the Georgia court about the five kinds of mitigating evidence separately, and we then explain why McClain's new argument is outside the scope of our review.

*A. Criminal History*

The Georgia court concluded that McClain failed to establish that his counsel's allegedly deficient performance in investigating McClain's criminal history prejudiced his sentence, and we cannot say that decision was objectively unreasonable. McClain argues that his counsel would have discovered that McClain had a minimal and nonviolent role in two previous armed robberies if counsel had interviewed Allen Davenport and Jeff Western, his codefendants for those robberies, but their testimonies would have been outweighed heavily by the evidence of McClain's culpability for those crimes. McClain testified to driving "the getaway car" during both robberies, pleaded guilty to being an accessory after-the-fact, and admitted knowingly participating in the second robbery. Chief Detective Billy Ivey of the Marion County Sheriff's Department also testified at the penalty phase of McClain's trial that McClain, Davenport, and Western planned the first robbery together. We agree with the district court that the decision of the Georgia court was reasonable.

*B. Childhood Abuse*

10

The Georgia court ruled that McClain failed to establish either that his counsel's performance in investigating evidence of childhood abuse was deficient or that any alleged deficiency prejudiced his sentence, and we cannot say that decision was objectively unreasonable. McClain argues that his counsel would have uncovered mitigating evidence of McClain's abusive childhood had they conducted adequate interviews of McClain, his family, and other witnesses. Based on the record before it, the Georgia court reasonably concluded that McClain failed to prove ineffective assistance.

Neither McClain nor his family informed counsel of McClain's abusive childhood. We have explained that whether information about childhood abuse was supplied by a defendant to his counsel is "extremely important" in determining reasonable performance. Van Poyck v. Fla. Dep't of Corr., 290 F.3d 1318, 1325 (11th Cir. 2002) (per curiam). McClain's counsel met with him between twenty and thirty times before trial and counsel conducted both telephone and in-person interviews of McClain's father, William McClain, and McClain's sister, Sharon McClain Gay.

Contrary to McClain's allegation that his counsel did not explain the kind of mitigating evidence they needed, counsel testified that they told McClain and his father and sister that they wanted to know "absolutely everything" about McClain,

11

including both "the good and the bad." McClain's counsel also testified that McClain's father and sister both told counsel about McClain's drug use and that McClain began "hanging out with the wrong crowd" in high school when his mother died, which suggests that McClain's father and sister understood the type of "bad" information that counsel wanted to elicit. McClain argues that his counsel's in-person interview of his sister was unlikely to uncover McClain's childhood abuse because the interview was conducted at least partially in the presence of McClain's allegedly abusive father, but the Georgia court reasonably concluded that McClain's counsel conducted a reasonable investigation after McClain failed to notify his counsel of any abuse.

McClain argues that his counsel would have uncovered mitigating evidence of McClain's abusive childhood had they interviewed McClain's brother, Tim McClain, McClain's friend, Richard Price, or other friends and acquaintances of McClain, but we cannot say the Georgia court was objectively unreasonable in ruling that reasonable counsel might not have attempted to interview Tim McClain, Price, or McClain's unidentified friends and acquaintances. McClain did not inform counsel of the alleged childhood abuse or that Tim McClain, Price, or any of his friends and acquaintances would have testified to any abuse. When asked by his counsel, McClain struggled to provide the names of any potential mitigating

12

witnesses.  McClain eventually identified Price, but McClain described Price only as a "friend."  McClain never identified Tim McClain as a potential mitigating witness and instead said that he did not get along with his brother.

McClain also argues that his counsel would have uncovered mitigating evidence of McClain's abusive childhood had they communicated better with their mental health expert, Dr. James I. Maish, but we cannot say the Georgia court was objectively unreasonable in ruling to the contrary.  Dr. Maish testified that he was "made aware, through speaking with [McClain], his father, and his sister, that [McClain] had an abusive childhood . . . ."  McClain's attorneys testified that they were unaware of any potential childhood abuse and that Dr. Maish did not mention it to them.  Counsel could have relied on the report of Dr. Maish, which did not mention child abuse, without asking Dr. Maish about the possibility of abuse.  A reasonable attorney could have expected a mental health expert to report to counsel evidence of abuse.  We agree with the district court that the decision of the Georgia court was reasonable.

### C. Substance Abuse

The Georgia court concluded that McClain's counsel was not deficient for failing to investigate and present more evidence of McClain's substance abuse, and we cannot say that decision was objectively unreasonable.  McClain argues that

many of his friends and acquaintances would have told his counsel of his substance abuse, including Price; McClain's roommate and coworker, Chuck Musgrove; and McClain's friend, Debbie Gwinn. McClain admits that his counsel was aware of his history of substance abuse, including his substance abuse on the night of the murder, and McClain acknowledges that evidence of substance abuse is often a "two-edged sword" that provides "little mitigating value . . . ." Stewart, 476 F.3d at 1217. "Rarely, if ever, will evidence of [substance abuse] be so powerful that every objectively reasonable lawyer who had the evidence would have used it." Id.

McClain's counsel could have reasonably concluded that it would be better to argue at sentencing, as McClain's counsel did, that the shooting was reflexive and unintentional, without presenting more evidence of McClain's substance abuse. McClain argues that counsel's failure to investigate was due to inattention, not a strategic decision to avoid potentially damaging testimony, but our review of counsel's performance is objective. "Because this standard is objective, it matters not whether the challenged actions of counsel were the product of a deliberate strategy or mere oversight. The relevant question is not what actually motivated counsel, but what reasonably could have motivated counsel." Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citation omitted). Even if McClain's counsel in fact had no strategic reason for not further investigating McClain's

14

history of drug abuse, counsel could have reasonably concluded that further investigation would not yield valuable evidence of mitigation. We agree with the district court that the decision of the Georgia court was reasonable.

### D. Neurological Disorder

The Georgia court ruled that McClain's counsel was not deficient in failing to discover McClain's alleged neurological disorder, and we again cannot say that decision was objectively unreasonable. The Georgia court also found that the testimony McClain contends should have been offered is not entirely favorable to him. McClain relies on the post-conviction testimony of Dr. Jorge A. Herrera-Pino that McClain suffered from a frontal lobe disorder as a result of his substance abuse, and McClain argues that adequate investigation by his counsel and proper communication between counsel and Dr. Maish would have uncovered the frontal lobe disorder.

That McClain later secured a more favorable opinion of an expert than the opinion of Dr. Maish does not mean that trial counsel's failure to obtain that expert testimony constituted deficient performance. See Gilliam v. Sec'y for Dep't of Corr., 480 F.3d 1027, 1035 (11th Cir. 2007) (per curium). McClain's counsel reasonably relied on Dr. Maish's opinion that McClain suffered from "Antisocial Personality Disorder" but did not suffer from a frontal lobe disorder or from any

15

"significant emotional disorder."  McClain blames Dr. Maish's failure to diagnose the frontal lobe disorder on his counsel's failure to inform Dr. Maish of McClain's history of childhood abuse and substance abuse, but that argument fails.  As McClain acknowledges, Dr. Maish was aware of both McClain's substance abuse and childhood abuse.  We agree with the district court that the decision of the Georgia court was reasonable.

*E.  Good Character*

The Georgia court concluded that McClain failed to establish either that his counsel's performance in investigating evidence of McClain's good character was deficient or that any alleged deficiency prejudiced his sentence, and we cannot say that decision was objectively unreasonable.  McClain argues that his counsel would have uncovered "strong humanizing evidence . . . about McClain's good qualities and his attempts to lead a clean life after prison" had they interviewed his friends and acquaintances.  Based on the record before it, the Georgia court reasonably concluded that, even if the failure of McClain's counsel to investigate fell below the standard of effective representation, McClain failed to establish that any deficient performance prejudiced his sentence.

The Georgia court reasonably concluded that McClain's character evidence was insignificant.  McClain argues that Brian Ellefson, McClain's supervisor at his

16

place of work, would have testified that McClain had an "excellent" work ethic and a "pleasant" personality. McClain also argues that Gwinn would have testified that McClain was a "wonderful person" whom Gwinn knew to be "patient and kind and caring." In the light of the seriousness of McClain's crime, the Georgia court concluded that there was not a reasonable probability that McClain's sentence would have been different had his counsel offered minimally consequential testimony regarding McClain's "good qualities." We agree with the district court that the decision of the Georgia court was reasonable.

*F. New Argument*

McClain also argues, for the first time, that his trial counsel was ineffective for failing to discover and present for the penalty phase mitigating evidence that Butler instigated the robbery and that Butler and her nephew, Diego Davis, testified for the state in return for a grant of immunity, but this argument is outside the scope of the certificate of appealability. See Murray v. United States, 145 F.3d 1249, 1250–51 (11th Cir. 1998) (per curium). "[I]n an appeal brought by an unsuccessful habeas petitioner, appellate review is limited to the issues specified in the [certificate of appealability]." Id. at 1251. We granted McClain's request for a certificate of appealability with respect to one issue: "[w]hether McClain's [trial] counsel rendered ineffective assistance in his investigation of mitigating evidence

17

for the penalty phase of the trial." Although we did not restate the mitigating evidence at issue, McClain identified the following mitigating evidence in each of his requests for a certificate of appealability: "evidence about McClain's family background, his long-term drug addictions, his good character, his prior convictions, and his impairments the night of the offense . . . ." McClain did not identify evidence that Butler instigated the robbery or evidence relating to prosecutorial immunity as mitigating evidence for the penalty phase in any of his requests for a certificate of appealability or in either his state or federal petition for a writ of habeas corpus. McClain instead relied on that evidence to support his claims of prosecutorial misconduct and ineffective assistance of trial counsel in the investigation of "exculpatory and impeach[ment]" evidence for the guilt phase of his trial. McClain may not now repackage his argument and describe this evidence as mitigating for the penalty phase to bring it within the scope of the certificate of appealability; neither the Georgia court nor the district court was ever asked to consider this argument.

## IV. CONCLUSION

The denial of McClain's petition for a writ of habeas corpus is

**AFFIRMED.**

18

BARKETT, Circuit Judge, concurring:

A lawyer must undertake a reasonable investigation as to the existence of mitigating evidence. Strickland v. Washington, 466 U.S. 668, 691 (1984). The scope of counsel's duty to investigate is not limited by the amount of information that a defendant chooses to reveal. See generally Rompilla v. Beard, 545 U.S. 374, 377 (2005) (holding that trial counsel's duty to investigate persists "even when a capital defendant's family members and the defendant himself have suggested that no mitigating evidence is available"); Coleman v. Mitchell, 268 F.3d 417, 449–50 (6th Cir. 2001) ("[D]efendant resistance to disclosure of information does not excuse counsel's duty to independently investigate."); American Bar Association Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases, 11.4.1(C) (1989) ("The investigation for preparation of the sentencing phase should be conducted regardless of any initial assertion by the client that mitigation is not to be offered.").[1]

These principles recognize a layperson's lack of knowledge of the law. This is especially true of the legal thicket surrounding death penalty jurisprudence. A defendant generally would not know what evidence is admissible or might

---

[1] "Prevailing norms of practice as reflected in American Bar Association standards and the like . . . are guides to determining what is reasonable." Williams v. Taylor, 529 U.S. 362, 396 (2000).

impact a jury's decision to impose the death penalty. Thus, a lawyer must explain what kind of evidence he or she is looking for or ask questions that would elicit such evidence. Simply asking a defendant for information about his or her life without any indication of what counsel is, or should be, looking for does not inform a defendant of the relevance of certain mitigating evidence that a defendant might not think of disclosing or want to disclose without having a reason to do so.

In this case, I am satisfied that the state court was not unreasonable in its application of clearly established federal law in concluding that McClain did not meet his burden of showing ineffective assistance of counsel. Counsel for McClain were extremely experienced and had many conversations with the defendant, his father, and his sister. Additionally, counsel hired a mental health expert to evaluate McClain and search for mitigating evidence. The mental health expert, who understood the relevance of evidence of abuse, conferred with counsel in preparation for his testimony and did not deem the abuse he discovered significant enough to be relevant to his testimony.