## 58347. POSEY v. THE STATE.

SMITH, Judge.

In this case, where Posey was convicted of voluntary manslaughter, the Sheriff of Haralson County testified as to Posey's questionable character for honesty and truthfulness, without his first having placed his character into issue. We therefore reverse, concluding that the trial court erroneously overruled Posey's motion for mistrial.

The testimony of Terrell Payton was the only evidence placing Posey on the scene of the crime. On cross examining the sheriff, appellant's attorney attempted to discredit Payton, and the following colloquy transpired: "Q. Does Terrell Payton have a reputation of being an alcoholic? A. In my opinion, yes, sir. Q. Does . . . Do you know Terrell Payton's reputation in the community here where he lives? A. I have an opinion. Q. You have an opinion? A. Yes, sir. Q. Would you believe Terrell Payton on his oath? A. Well, I've questioned Terrell Payton and I've taken statements from Terrell Payton after advising him of his rights, and I did believe him, yes, sir. Q. Would you believe him on his oath generally? A. The only way I can answer that, it would depend on the circumstances. If he was drunk I would not. Q. Have you made a statement to anyone that you wouldn't believe Terrell Payton on his oath? A. No, sir. Q. You have not made that statement? A. No, sir. I have not. Q. Have you made the statement, the flat statement, that you wouldn't believe what Terrell Payton stated? A. No, sir. Q. You didn't make that statement to Mrs. Velda Philpot over the phone? A. No, sir. Q. What you are now telling this jury is that you might believe him and you might not believe him. Is that what you're saying? A. Well, it would depend on the circumstances with Terrell Payton, or Foster Posey either one." The trial judge, although stating his realization, "that if we tried to give any instructions on it, it'd make it worse," denied Posey's motion for mistrial and instead gave instructions cautioning the jury to disregard the sheriff's volunteered

assessment of Posey's character. Posey later took the stand and denied involvement in the killing and presence at the scene.

It is obvious from the transcript that, by his remark concerning Posey's trustworthiness, the sheriff attempted to mitigate the damage his testimony wrought upon the state's case. That is, the sheriff had to admit the state's key witness was only marginally believable, but, in order to alleviate somewhat the effect of that admission, he also stated to the jury that he would not necessarily believe Posey either. This state's witness had been sheriff for over nine years and certainly was aware that his statement was highly improper and damaging to Posey. We cannot have faith that the trial court's cautionary charge effectively removed from the jury's minds the opinion of the sheriff, an elected, professional law enforcement officer whose sentiments in criminal matters command the highest respect.

In a criminal case, it is the general rule that evidence of the defendant's bad character cannot be introduced unless the defendant has first broached the character issue with evidence of his own. Code §§ 38-202 and 38-415; *Clark v. State,* 52 Ga. App. 254 (183 SE 92) (1935). When it is impossible for the trial court by corrective instructions to rectify the harm done by improper testimony, a mistrial must be granted. *Harris v. State,* 214 Ga. 739, 742 (107 SE2d 801) (1959); *Boyd v. State,* 146 Ga. App. 359 (246 SE2d 396) (1978). We reiterate here what we said in *Boyd,* at pp. 359-362: "It may well be argued that peace officers are not always well acquainted with our rules of evidence and that statements such as the one here are merely inadvertent. But if we refuse to reverse this judgment, then we provide no incentive to district attorneys and solicitors to counsel their witnesses, especially law enforcement officers, to avoid extraneous and inadmissible outbursts. It is high time that this court go on record as opposing without reservation such conduct by law enforcement officers . . .

"The Supreme Court in the case of *Newton Bros. v. Shank,* 240 Ga. 471 (241 SE2d 231) (1978), zeroed in on this matter of the trial court cautioning the jurors to 'disabuse their minds' of harmful testimony. The court,

dealing with an instruction to the jury as to the limited admissibility of evidence of compromise, said: ' "The rule against allowing evidence of compromises is founded upon recognition of the fact that *such testimony is inherently harmful,* for the jury will draw conclusions therefrom in spite of anything said by the parties at the time of discussing the compromise and *in spite of anything which may be said by the judge in instructing them as to the weight to be given such evidence." ' "

*Judgment reversed. Quillian, P. J., and Birdsong, J., concur.*

SUBMITTED SEPTEMBER 10, 1979 — DECIDED NOVEMBER 7, 1979 —

*W. P. Johnson,* for appellant.
*John T. Perren, District Attorney,* for appellee.