S92P0087. WARD v. THE STATE.
(417 SE2d 130)

BELL, Justice.

The defendant, James Ray Ward, was convicted of murder, kidnapping with bodily injury, and feticide. He has been sentenced to death for the murder conviction by a jury in Walker County. He appeals his convictions and death sentence. For reasons that follow, we affirm.[1]

1. The victim's husband left for work at 6:00 a.m. on August 17, 1989. When he returned from work that evening, the 23-year-old victim, who was five months pregnant, was missing, along with her car. Their 22-month-old daughter was at home by herself.

When the police arrived later that evening, many friends and relatives were present. At first, nothing appeared to be missing except for the victim and her car, but eventually it was learned that a telephone cord had been forcibly removed from the wall jack (leaving the plug), that most of the victim's underwear had been removed from her dresser drawer, and that a quilt and a baby blanket had been

---

[1] The crime occurred August 17, 1989. The case was tried June 24 through July 12, 1991. A motion for new trial was duly filed and denied after hearing on August 30, 1991. An appeal was docketed in this court on October 16, 1991, and oral arguments were heard January 14, 1992.

taken.

The victim's car was discovered the next day on an unpaved logging road. Her body was discovered the day after that in a trash dump several miles away. Ligature marks around her wrists and ankles indicated she had been bound. Three of her ribs were broken and there were various bruises about her body. Her fetus was in a partially delivered condition. The mother died of asphyxiation resulting from her pharynx being stuffed with wadded-up paper towels. The death of the mother resulted in the destruction of the fetus.

No clear suspects were developed for several months. Then, early in the morning of December 18, 1989, the defendant, wearing gloves and a stocking mask, broke into a Gordon County home and kidnapped a woman from her bed as she lay sleeping with her nine-year-old daughter. He drove the woman to an abandoned farmhouse, forced her to model negligees he had brought with him, and raped her. Then he took her to another abandoned house and raped her again. He told her that he had killed two people and pointed out a "good place" to "dump bodies" if she ever wanted to. He also told her he had been watching her and told her some things about her personal situation that a stranger should not have known. He returned her to her home. Later, she discovered that some of her underwear was missing.

The Gordon County police arrested the defendant at his residence. The defendant's home was unfinished inside. Most of the walls were not sheetrocked and there was no running water and, except for the bedroom, no electricity. The unfinished rooms were full of boxes containing several thousands of dollars worth of lingerie and adult magazines. The defendant maintained notebooks carefully labelling and indexing magazines and lingerie catalogs (including descriptions and numerical ratings of women in the magazines). The officers found scraps of paper with physical descriptions of and tag numbers for women; dates, times and locations of observations; directions to their homes; newspaper clippings about rapes, murders and missing women; newspaper photographs of women; and driver's licenses and insurance cards belonging to various women.

In addition, officers found handwritten directions to the home of the victim in this case, her swimming suit bottom, her quilt and baby blanket, and — hidden under a pile of wood — six newspaper articles about her disappearance.

On January 18, 1990, the defendant admitted to police that he had visited the victim's home to check on a well he had helped drill earlier and had spoken to her. He said:

> I don't know if I done anything to the girl or not. I could have done it. . . .

I been a liar all my life. I need some help. If I done it, I didn't mean for it to happen and I am sorry.

2. Ward complains of the state's use of extrinsic transactions to establish motive and identity, and contends they were not sufficiently similar to the crime on trial.

As we stated in *Felker v. State*, 252 Ga. 351, 359 (1) (a) (314 SE2d 621) (1984):

> Similarity between the charged crime and the extrinsic crime is an important factor pertinent to a determination of the admissibility of the extrinsic crime. However, it is not the only factor, nor is it necessarily the controlling factor. "The ultimate issue in determining the admissibility of evidence of other crimes is not mere similarity but relevance to the issues in the trial of the case." *Williams v. State*, 251 Ga. [749,] 784 [(312 SE2d 40) (1983)]. Depending upon the purpose for which the extrinsic offense is offered, "the state may be required to prove a high degree of similarity between relevant characteristics of the extrinsic offenses and the charged crimes, or it may only have the burden of showing a logical connection between crimes which are essentially dissimilar. [Cits.]" *Williams v. State*, supra, 251 Ga. at 811. (Smith, J., dissenting.) [Footnote omitted.]

The extrinsic transactions in this case show that Ward is obsessed with having control and dominance over women and has engaged in a pattern of ritualistic "stalking" of and collecting "trophies" from women. The extrinsic transactions were relevant to explain the nature of the crime and to prove identity by establishing motive. There was no error in their admission in evidence.

3. An FBI agent who specializes in the study of sex crimes was qualified as an expert witness in the field of sexual deviation and the behavior of violent sexual offenders. He testified at the guilt phase of the trial, explaining sexual deviations and the significance of certain conduct in relation to these deviations.[2] In addition, he enumerated for the jury objective similarities between the crime on trial and the Gordon County rape. To this latter testimony, the defendant objects, contending that the presence or absence of similarities were matters which the jurors could determine for themselves. Citing *Fordham v. State*, 254 Ga. 59 (4) (325 SE2d 755) (1985), he contends this testimony was impermissible opinion evidence. We do not agree. The

---

[2] He testified for the state at the guilt phase of the trial, and for the defense at the sentencing phase.

agent's opinion was one of fact, and was not an inadmissible legal conclusion. The jury was not prevented from drawing its own conclusions from the facts testified to. See *McCartney v. State*, 262 Ga. 156, 159 (1) (414 SE2d 227) (1992).

4. The evidence, although circumstantial, supports the conviction. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

5. There was no error in the exclusion of polygraph evidence from the guilt phase of the trial. *Sustakovitch v. State*, 249 Ga. 273, 275 (2) (290 SE2d 77) (1982).

6. Ward raises several issues about the prosecution's guilt-phase closing argument:[3]

(a) He contends the prosecutor's "make them explain" argument amounted to a comment upon the defendant's failure to testify and was an attempt to shift the burden of proof to the defendant.

The prosecutor told the jury that the defense was not obligated to offer any evidence and that the burden of proof was on the state. The prosecutor's exhortation to "make them explain" why the state's evidence did not amount to proof beyond a reasonable doubt was not an attempt impermissibly to shift the burden of proof to the defendant.[4] *United States v. Norton*, 867 F2d 1354, 1364, fn. 10 (11th Cir. 1989).

Nor do we view such argument as a manifest attempt to comment on the defendant's failure to testify, nor would the jury have "naturally and necessarily" taken it to be such a comment. *Christenson v. State*, 261 Ga. 80, 88 (7) (a) (402 SE2d 41) (1991).

(b) Although the defendant was entitled to cross-examine the Gordon County victim about the issues of consent and force, the prosecutor likewise was entitled during his closing argument to comment on that cross-examination in light of the defendant's guilty plea to rape in Gordon County. The prosecutor did not improperly limit and belittle the defendant's right to confront witnesses against him, as the defendant contends.

(c) In response to defense arguments about the lack of mud inside the victim's car despite evidence that it had rained the morning she disappeared, the prosecutor wondered, rhetorically, why the defense was making an issue out of it, because the car obviously did not drive itself to the place where it was found. The prosecutor then commented that, unlike defense counsel, he (the prosecutor) had "grown

---

[3] An assistant district attorney made the initial closing argument, while the district attorney made the final closing argument. References to the "prosecutor" in this division refer to both.

[4] We note, moreover, that the jury was properly instructed by the court on the state's burden of proof and the defendant's presumption of innocence.

up in these woods" and that some of the jurors probably had also. The defendant complains about this comment. While the prosecutor's reference to his own experience with "these woods" was doubtless objectionable, *Conner v. State*, 251 Ga. 113, 122-123 (6) (303 SE2d 266) (1983), we do not find the comment sufficiently material or prejudicial to warrant reversing the defendant's conviction.

(d) The prosecutor argued:

Remember during the rape [in Gordon County], he would ask her are you having an orgasm, do you enjoy the sex with me. There are reasons we asked those questions, we can't discuss it in this part of the case, but there are significant reasons for asking those questions.

Although this argument warrants our disapproval, it is too ambiguous to warrant reversal.[5] See *Donnelly v. DeChristoforo*, 416 U. S. 637, 647 (94 SC 1868, 40 LE2d 431) (1974).

(e) Although statements of personal opinion generally are improper, we find no reversible error where the prosecutor said "I am telling you the truth" while admitting he did not know where the missing telephone cord was, or what had happened to some of the missing underwear.

(f) The prosecutor did not argue impermissibly by telling the jury that convicting the defendant only of involuntary manslaughter "is like convicting Jack the Ripper or Charles Manson for disturbing the peace." *Todd v. State*, 261 Ga. 766, 768 (2) (b) (410 SE2d 725) (1991). See also *Tucker v. Kemp*, 762 F2d 1496, 1507 (11th Cir. 1985).

(g) It was not impermissible to tell the jury that the victim's daughter no longer had a mother, her husband no longer had a wife, and her mother had lost her daughter. *Moon v. State*, 258 Ga. 748, 760 (35) (375 SE2d 442) (1988).

(h) Finally, that the crime was sexually motivated was a reasonable deduction from the evidence. *Wade v. State*, 258 Ga. 324, 326-327 (5) (368 SE2d 482) (1988); *Patillo v. State*, 258 Ga. 255, 257 (2) (368 SE2d 493) (1988).

7. Searches of the defendant's home were authorized either by warrant or by the consent of the defendant's wife. See *Caldwell v. State*, 260 Ga. 278, 290-291 (2) (393 SE2d 436) (1990). The items seized from the home were obviously relevant to the crime and were properly seized as evidence. The warrants were issued by a neutral and detached magistrate, *Sanders v. State*, 151 Ga. App. 590, 591-592

---

[5] Even with the benefit of the sentencing-phase transcript, we are not sure to what the prosecutor is referring, or why "those questions" could be asked but not discussed in "this part of the case."

(2) (260 SE2d 504) (1979), and were supported by probable cause. *State v. Alonso*, 159 Ga. App. 242 (283 SE2d 57) (1981). There was no error in the denial of the motion to suppress.

8. Ward contends that the trial court erred in permitting the state to use as a handwriting exemplar a written statement he made to authorities in the Gordon County case. In the Gordon County prosecution, the statement was suppressed based on a violation of *Edwards v. Arizona*, 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981). Ward contends that, since the statement was suppressed, its use violated his Fifth Amendment right against self-incrimination.

While under *State v. Armstead*, 152 Ga. App. 56 (1) (262 SE2d 233) (1979), a defendant cannot be compelled to produce a handwriting exemplar, it is not error to allow the state to use as a handwriting exemplar a written statement voluntarily delivered by the defendant, even if the contents of the statement are later suppressed because of a violation of the prophylactic rule of *Edwards v. Arizona*, supra, 451 U. S. Cf. *Martin v. Wainwright*, 770 F2d 918, 928 (11th Cir. 1985) (confessions inadmissible because of violation of "per se" bar are not necessarily involuntary — fruits of voluntary statements are not "tainted").

9. After the defendant has requested counsel, the police may not initiate questioning. *Edwards v. Arizona*, supra. "However, the defendant himself may initiate further communications with the police." *Housel v. State*, 257 Ga. 115, 121 (1) (d) (355 SE2d 651) (1987). The record supports the trial court's findings that Ward initiated communications with the police and waived his *Miranda* rights. His statement (see Division 1 of this opinion) was properly admitted.

10. By its verdict of malice murder, the jury found that Ward intended to kill his victim. The evidence supports this finding. Hence, there is no merit to Ward's contention that he should not have been sentenced to death because he did not intend to kill. See *Jefferson v. State*, 256 Ga. 821, 829 (353 SE2d 468) (1987).

11. Since Ward was not found guilty but mentally ill, we do not address his contention that guilty but mentally ill defendants are ineligible for a death sentence. See *Spraggins v. State*, 258 Ga. 32, 34 (3), fn. 2 (364 SE2d 861) (1988). Compare *Fleming v. Zant*, 259 Ga. 687 (386 SE2d 339) (1989).

12. There was no manifest error in the denial of Ward's motion for change of venue. *Tharpe v. State*, 262 Ga. 110 (5) (416 SE2d 78) (1992).

13. A criminal defendant is not entitled to a post-indictment committal hearing. *Spears v. Johnson*, 256 Ga. 518 (350 SE2d 468) (1986). See also *Pruitt v. State*, 258 Ga. 583, 585 (2) (373 SE2d 192) (1988).

14. The offense of feticide is defined in OCGA § 16-5-80 (a) as

follows:

> A person commits the offense of feticide if he willfully kills
> an unborn child so far developed as to be ordinarily called
> "quick" *by any injury to the mother of such child, which
> would be murder if it resulted in the death of such mother.*
> [Emphasis supplied.]

Ward argues that the emphasized language of this definition precludes a conviction for both murder of the mother and feticide. We disagree with Ward's statutory analysis. We find that the emphasized language

> contributes specificity to the offense. A jury must make a
> factual finding that defendant's actions, had they resulted in
> death to the mother, would have constituted murder. [*Smith
> v. Newsome*, 815 F2d 1386, 1388 (3) (11th Cir. 1987).]

Moreover, the "same conduct" of an accused may support his conviction of more than one crime so long as one crime is not included in the other crime as a matter of law or of fact. *State v. Estevez*, 232 Ga. 316 (206 SE2d 475) (1974). In this case neither crime was included in the other as a matter of law or of fact, and it was not error to convict Ward of both offenses. See *Potts v. State*, 261 Ga. 716 (1) (410 SE2d 89) (1991).[6]

15. The statutory voir dire questions, see OCGA § 15-12-164, do not conflict with or in any way impinge upon the defendant's presumption of innocence.

16. A criminal defendant is not entitled to a transcript of the grand jury proceedings. *Frazier v. State*, 257 Ga. 690, 692 (6) (362 SE2d 351) (1987). See *Isaacs v. State*, 259 Ga. 717, 719-721 (2) (386 SE2d 316) (1989).

17. No error has been shown in the selection of grand jury forepersons in Walker County. See *Ingram v. State*, 253 Ga. 622, 626-627 (1) (c) (323 SE2d 801) (1984).

18. The trial court did not abuse its discretion by admitting in evidence gruesome photographs of the victim's body at the crime scene after the defendant made an issue of the length of time the body had lain there. See *Taylor v. State*, 261 Ga. 287, 292 (6) (404 SE2d 255) (1991).

19. On June 10, 1991, the defendant filed a motion to recuse the

---

[6] The death of the mother was a necessary element of the crime of murder, but not of the crime of feticide. The destruction of the fetus was a necessary element of the crime of feticide, but not of the offense of murder.

trial judge on the ground that his professional and personal relationship with another trial judge in the circuit, who was the victim's uncle, "reasonably calls into question the impartiality" of the trial judge. In the motion it was conceded that the defense was aware of the familial relationship between the victim and the other judge in the circuit and had not filed a motion to recuse for almost a year, but claimed that "having had the opportunity to personally watch [the trial judge], the defendant" distrusted "the situation."

An outside judge was assigned to hear the motion. After a hearing based upon the motion as filed and a stipulation of facts, the judge assigned to hear the motion ruled against it on three grounds: First, the motion was not timely filed; second, the motion's "bare conclusions" of lack of impartiality were not legally sufficient to support the motion or to warrant further proceedings; and, third, other than the bare fact that another trial judge in the circuit was the uncle of the victim (whom the trial judge did not know), nothing had been presented that might call into question the impartiality of the trial judge. The order denying the motion noted that if "friendship and association" with the victim's uncle were sufficient to require recusal, "almost every judge of this state would be disqualified."

There was no error. See Rule 25.2 of the Uniform Rules of Superior Court; Code of Judicial Conduct, Canons 2 and 3; *Romine v. State*, 251 Ga. 208, 210 (2) (305 SE2d 93) (1983).

20. There was no error in the denial of the defendant's challenges to the jury array. The defendant complains of the use of the 1980 census figures rather than the 1990 census figures to compile the jury lists. The record shows, however, that the 1990 figures were not available when the jury lists were drawn up. Moreover, the defendant has not pointed to any significant disparity resulting from the use of the 1980 figures. See *Frazier v. State*, supra, 257 Ga. at 691 (2); *Lipham v. State*, 257 Ga. 808, 811-812 (5) (364 SE2d 840) (1988).

21. There is no merit to the contention that the Unified Appeal Procedure is unconstitutional. *Isaacs v. State*, supra, 259 Ga. at 722 (7).

22. Death-qualification of prospective jurors is not improper. *Moon v. State*, 258 Ga. 748, 761 (40) (375 SE2d 442) (1988). The trial court's rulings on the qualifications of the prospective jurors were "within the deference due the trial judge's determination." *Jefferson v. State*, 256 Ga. 821, 824 (2) (353 SE2d 468) (1987).

23. The defendant is not entitled to separate juries for the guilt and sentencing phases of the trial. *Miller v. State*, 237 Ga. 557, 559 (229 SE2d 376) (1976).

24. The defendant's criminal record was properly admitted in aggravation at the sentencing phase of the trial. *Wilson v. State*, 250 Ga. 630, 638 (10) (300 SE2d 640) (1983).

25. The court's instructions on the credibility of witnesses were not error. *Noggle v. State,* 256 Ga. 383, 385-386 (4) (349 SE2d 175) (1986).

26. Although the pattern charge on extrinsic transactions is not immune to criticism,[7] we do not find that its delivery in this case amounts to reversible error.

27. The court's instructions on "reasonable doubt" were not erroneous. *Potts v. State,* supra, 261 Ga. at 723 (14); *Bradford v. State,* 261 Ga. 833, 835 (2) (412 SE2d 534) (1992). But see *Vance v. State,* 262 Ga. 236, 238 (2), fn. 5 (416 SE2d 516) (1992), in which we disapproved the use of the phrase "moral and reasonable certainty" when charging on reasonable doubt.

28. General deterrence is a "valid penological justification[ ] for the imposition of the death penalty." *Conner v. State,* supra, 251 Ga. at 122 (5). The court did not err by refusing the defendant's request to charge the jury not to consider general deterrence. See *Walker v. State,* 254 Ga. 149, 159 (14) (327 SE2d 475) (1985).

29. The court's sentencing-phase instructions on the state's burden of proof were sufficient. Although the court did not state specifically that there was a "presumption" in favor of a life sentence, the court told the jury that a death sentence "shall not be imposed" unless the state proved the existence of at least one statutory aggravating circumstance beyond a reasonable doubt, and told the jury that it could impose a life sentence even if the state proved the existence of statutory aggravating circumstances. See *Moon v. State,* supra, 258 Ga. at 749 (1).

The court did not err by refusing to deliver the defendant's requested instruction not to consider extrinsic crimes admitted in general aggravation unless proved beyond a reasonable doubt. While *statutory* aggravating circumstances must be proved beyond a reasonable doubt, the jury is not required to "evaluate each and every evidentiary vignette pursuant to the reasonable doubt standard." *Ross v. State,* 254 Ga. 22, 31 (5) (d) (326 SE2d 194) (1985).

30. Nor was it error not to instruct the jury on the mitigating circumstances of mental disturbance and "residual doubt." It is well settled that mitigating circumstances need not be specifically identified in charge. *Taylor v. State,* 261 Ga. 287, 295 (11) (404 SE2d 255) (1991).

31. The trial court properly charged the necessity for unanimity in the jury's verdict. *Potts v. State,* 259 Ga. 96, 104 (20) (376 SE2d 851) (1989).

32. A proper foundation was laid for the admission in aggravation

---

[7] See Mills, Criminal Law, 43 Mercer L. Rev. 175, 230, fn. 583 (Annual Survey issue).

of the defendant's prior guilty pleas. See *Spencer v. State*, 260 Ga. 640, 647-649 (10) (398 SE2d 179) (1990).

33. The evidence supports the jury's finding that the offense of murder occurred during the commission of the offense of another capital felony. OCGA § 17-10-30 (b) (2). Although the jury's verdict did not specify the supporting capital felony, the only one charged was kidnapping with bodily injury. Absent objection to the form of the verdict, the jury's finding was sufficiently clear to allow us to rationally review the verdict. *Jefferson v. State*, supra, 256 Ga. at 828 (9).

34. The court's instructions on the § b (1) circumstance were incorrect. OCGA § 17-10-30 (b) (1). As to this circumstance, but not the § b (2) circumstance discussed above, the court erroneously stated to the jury that "kidnapping" is a capital felony. As we have noted previously, kidnapping with bodily injury is a capital felony but kidnapping is not. *Crawford v. State*, 254 Ga. 435, 441 (5) (330 SE2d 567) (1985). The erroneous instruction does not amount to reversible error, however. The jury's § b (2) finding is valid and is sufficient to support the death sentence. Since the evidence admitted in support of the § b (1) circumstance was properly admitted and considered anyway, the erroneous instruction relative to the § b (1) circumstance does not taint the jury's § b (2) finding or its decision to impose a death sentence based upon all the facts and circumstances of the case. *Zant v. Stephens*, 250 Ga. 97 (297 SE2d 1) (1982).

35. We do not find that the jury's decision to impose a death sentence was impermissibly influenced by passion, prejudice or other arbitrary factor. OCGA § 17-10-35 (c) (1).

36. Ward's death sentence is neither excessive nor disproportionate to penalties imposed in similar cases considering both the crime and the defendant. OCGA § 17-10-35 (c) (3). The similar cases listed in the Appendix support the sentence imposed in this case.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 11, 1992 —
RECONSIDERATION DENIED JULY 2, 1992.

*Christopher A. Townley, Gleason, Davis & Dunn, David J. Dunn, Jr.,* for appellant.

*Ralph Van Pelt, Jr., District Attorney, Mary Jane Palumbo, Michael J. Moeller, Assistant District Attorneys, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Peggy R. Katz, Staff Attorney,* for appellee.

APPENDIX.

*Lynd v. State*, 262 Ga. 58 (414 SE2d 5) (1992); *Ford v. State*, 257 Ga. 461 (360 SE2d 258) (1987); *Childs v. State*, 257 Ga. 243 (357 SE2d 48) (1987); *Alderman v. State*, 254 Ga. 206 (327 SE2d 168)

(1985); *Wilson v. State*, 246 Ga. 62 (268 SE2d 895) (1980); *Redd v. State*, 242 Ga. 876 (252 SE2d 383) (1979).