## S96A1916. McGEE v. THE STATE.

(480 SE2d 577)

THOMPSON, Justice.

Ray Anthony McGee was convicted by a jury of malice murder in the shooting death of Marcella Dula, his former girl friend. McGee admits shooting Dula, but claims that the weapon discharged accidentally. Following the denial of his motion for new trial, he appeals from the judgment of conviction and sentence entered thereon.[1] Finding no reversible error, we affirm the conviction.

---

[1] The crime occurred on June 3, 1994. McGee was charged in a two-count indictment on June 22, 1994 with malice murder and felony murder. Trial commenced on January 30, 1995. On February 2, 1995, McGee was found guilty of malice murder. He was sentenced on the same day to life imprisonment. An out-of-time motion for new trial was allowed by the trial court, which was filed on March 16, 1995. The motion for new trial was denied on July 24, 1996. A notice of appeal was filed on August 9, 1996. The case was docketed in this Court on August 28, 1996, and oral argument was heard on November 12, 1996.

At 12:15 a.m. on Friday, June 3, 1994, McGee telephoned a friend and told him that he had just shot and killed Marcella Dula. When asked why he did it, McGee told his friend, "The bitch wouldn't listen to me." The friend, in turn, notified the police.

Officers were dispatched to McGee's apartment, and were met at the door by McGee who stated, "I didn't mean to do it. I shot her. I didn't know the gun was loaded." They found the victim's body fully clothed on the bed in McGee's bedroom, under a pile of blankets and pillows. A purse was wrapped around her arm and she had a set of keys in her hand. The cause of death was a single gunshot through the head from a high-velocity rifle, at a range of six inches. A high-power, bolt-action rifle was found at the foot of the bed. It was established that McGee had purchased the rifle at a pawn shop about one week earlier. A firearms expert who examined the rifle testified that 5.75 pounds of pressure are required to pull the trigger and fire the cartridge, and that the weapon would not discharge accidentally.

The events leading up to the shooting are as follows: McGee met Dula and they began dating in 1993 while they were both employed at Domino's Pizza. Several months later she ended the relationship and began dating another co-worker, Samuel Mualen. Thereafter, McGee began making threats on Dula's life. In May 1994 Dula's parents visited her from out-of-town. Mualen drove Dula's father to McGee's apartment to talk to him about his threats. During that confrontation, McGee admitted the threats, but claimed that he was only joking.

One month before Dula's death, McGee confronted her at Mualen's home. In Mualen's presence, McGee threw her into a chair, attempted to strangle her, and repeatedly threatened to kill her. Mualen came to her assistance and McGee left. Dula told Mualen that McGee held a knife to her throat during that attack; however, Mualen did not observe the knife because McGee had his back to him. Dula also reported this incident in a telephone conversation with her father, including McGee's assault with the knife.

Two weeks later, McGee confronted Mualen at work and told him that he wanted to shoot and kill Dula that night. Mualen called Dula and told her about the threats and she decided to spend the night at a friend's home. It was at this time that McGee purchased the murder weapon.

A week before the shooting, McGee telephoned Mualen and warned him, "I'm going to kill both of you." In response, Mualen went to McGee's apartment to attempt to reason with him. McGee showed Mualen his rifle and threatened to shoot both Mualen and Dula that night, but claimed that he had no bullets. At the same time, Dula told her father by telephone that McGee's threats on her life continued.

Dula's close friend, Tammy Turner, testified that several days before the shooting, Dula revealed to her that she was tired of McGee's continuous harassment, and that she knew he was going to kill her. She further stated: "if anything happened to me, you know who did it, . . . call the police." Turner urged her to seek a restraining order, and although Dula was initially reluctant because she feared it would further agitate McGee, she finally agreed to do so. Dula made plans to move in with Turner on Thursday (the night of the shooting), and told Turner to expect her around 7:30 p.m.

Thursday night, McGee confronted Mualen at work. He was upset because he learned that Dula intended to get a restraining order against him. At 5:30 p.m. that evening, Dula telephoned her father and reported that the situation had improved because McGee had not bothered her during the past week. He advised her to pursue the restraining order. She told him that she would be spending the night at Turner's apartment. She never showed up at Turner's apartment and was not heard from again.

McGee arrived at his apartment at 11:30 p.m. (about 30 minutes before the shooting), to find his downstairs neighbor visiting. According-ing to the neighbor, McGee appeared "upset," and he told her he was expecting company. It was agreed that she would return to her apartment and he would stomp on the floor when it was okay for her to return. As she was leaving his apartment at 11:35 p.m., the neighbor observed Dula's car approaching (she was familiar with the vehicle). She returned to her own apartment, and at 11:56 p.m. she heard "fighting and stomping" in McGee's apartment above. The noise stopped abruptly shortly thereafter. At 12:15 a.m., McGee notified his friend by telephone that he had just killed Marcella Dula.

1. The evidence was sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), to find McGee guilty of malice murder.

2. McGee received the required pre-trial notice of the State's intention to introduce certain prior act evidence at trial,[2] consisting of his guilty plea and conviction for placing a harassing telephone call to a previous girl friend. OCGA § 16-11-39.1. At a pre-trial hear-ing to determine admissibility, the State proffered evidence that eight months after the termination of a previous relationship, McGee continued to contact his former girl friend, leaving messages on her answering machine. One such recorded message contained a threat on her life and the life of her present boyfriend. She turned the tape over to the police.

The prosecutor argued that there is no issue of identity of the

---

[2] See Uniform Superior Court Rule 31.1.

perpetrator since McGee admitted shooting Dula, and asserted that the act is similar in that it shows a pattern of threatening former girl friends after the termination of their relationships. The State sought to introduce the prior act evidence (which occurred one year earlier) for the limited purpose of showing bent of mind or intent, and to negate McGee's defense of accident. The trial court ruled the evidence admissible.

The witness' trial testimony was preceded by a limiting instruction that the evidence was to be considered only insofar as it bore on defendant's state of mind as a material element of the offense for which he was on trial, and for no other purpose. Over objection, the witness testified that in February 1993, she received a telephone call from McGee, which was recorded on her telephone answering machine. The tape was played and a printed transcription was provided to the jury. McGee was heard to say, "I'm going to prove to you something right now that I'm going through with what I said . . . You can call the police, you can call whoever you wanna (sic) and have them listen to this recording. I don't give a damn. I'm gonna prove to you once and for all that I meant what I said. And I guarantee you this — I'll bet you won't make it out of town tomorrow." The witness explained that McGee had previously threatened to kill her. The State then introduced into evidence a certified copy of his 1993 conviction.

> Generally, evidence of other independent crimes or acts committed by the defendant is inadmissible as it tends to put the defendant's character into evidence. [Cit.] Exceptions to this rule permit evidence of independent crimes committed by the defendant to be admitted for the limited purposes of showing identity, motive, plan, scheme, bent of mind and/or course of conduct. [Cit.]

*Chastain v. State*, 260 Ga. 789, 790 (3) (400 SE2d 329) (1991). But two conditions to admissibility must be satisfied. First identity must be shown — that the independent crime was committed by the defendant. Id. Identity is conceded in the present case. We thus focus on the second requirement, that there " 'be sufficient similarity or connection between the independent crime and the offense charged, that proof of the former tends to prove the latter.' [Cit.]" Id. at 791.

> If a trial court finds that "other transactions" evidence is so attenuated and dissimilar as to lack relevancy, then that evidence should be excluded because its prejudice outweighs its probative value. "[W]ithout some sort of probative connection between the prior act and the crime charged, the

prejudicial nature of the prior act evidence will outweigh its probative value." [Cit.]

*Farley v. State*, 265 Ga. 622, 623 (2) (458 SE2d 643) (1995).

We find an insufficient probative connection between McGee's threats to a former girl friend and the present charge of malice murder. Since the evidence was neither similar nor logically connected to the crime charged, it does not tend to prove any material issue in the case. Instead, it tends only to establish that the defendant committed the crime on trial because he is a man of criminal character. " 'The ultimate issue in determining the admissibility of evidence of other crimes is not mere similarity but relevance to the issues in the trial of the case.' [Cit.]" *Ward v. State*, 262 Ga. 293, 295 (2) (417 SE2d 130) (1992). The prior act evidence is irrelevant and should have been excluded from trial. *State v. Johnson*, 246 Ga. 654 (272 SE2d 321) (1980).

Although evidence of the independent crime should not have been admitted, we find a "high probability that [the nonconstitutional] error did not affect the judgment." *Johnson v. State*, 238 Ga. 59 (230 SE2d 869) (1976). Review of the admissible evidence shows that after a pattern of threats on Dula's life, communicated repeatedly by McGee to at least three individuals, he set out to obtain a high-powered rifle in order to carry out his plan to kill her. He knew and was enraged about the fact that Dula was planning to seek a restraining order against him. Immediately after the shooting, he telephoned his friend and informed him that he had killed the victim. The friend asked, "Ray, why did you do it? What did she do that could possibly cause you to do something like this?" McGee's "exact" response was, "she wouldn't listen to me. . . . The bitch wouldn't listen to me." He asserted that the shooting was accidental only when the police arrived. However, his defense of accident was negated by the State's firearms examiner who testified that a series of tests conducted on the murder weapon established that it would not discharge accidentally. Given the nature of this evidence, we are confident that admission of the independent crime evidence did not measurably contribute to the verdict and did not amount to reversible error. *Johnson v. State*, supra. See also *Hill v. State*, 263 Ga. 37 (1) (427 SE2d 770) (1993).

3. McGee contends that the trial court erred in denying his motion for mistrial, which was occasioned by a non-responsive comment from McGee's former girl friend. The witness was called by the prosecution for the purpose of laying a foundation to admit the prior taped threat. On direct examination she testified that she had a two-year relationship with McGee, which she terminated in 1992. The prosecutor then inquired, "Did there come a time after you broke up

with him that you heard from him?" She replied, "Yes, ma'am. He stalked me for about a year." McGee's counsel moved for mistrial on the ground that the comment impermissibly placed his character in issue and could not be cured by instructions from the court. The trial court admonished the witness to refrain from such comments and instructed the jury to disregard the comment in its entirety. McGee renewed his motion for mistrial, which was denied.

Because the trial court acted immediately, ruled out the offensive testimony, and properly instructed the jury to disregard the statement, and "give it no consideration whatsoever," we find no abuse of discretion in denying the motion for mistrial. *Stanley v. State*, 250 Ga. 3, 4 (2) (295 SE2d 315) (1982). *Posey v. State*, 152 Ga. App. 216 (262 SE2d 541) (1979), and *Boyd v. State*, 146 Ga. App. 359 (246 SE2d 396) (1978), relied on by McGee, do not compel a contrary result. In both cases, the Court of Appeals found reversible error resulting from inadmissible, voluntary comments by law enforcement officers ("who should know better," id. at 361), which impermissibly placed the defendants' character in issue. There was no such deliberate conduct in the present case.

4. McGee asserts that the trial court impermissibly allowed his character to be placed in issue when it admitted into evidence three photographs taken at the crime scene because they were irrelevant and prejudicial. The photographs, taken by a crime scene investigator, depicted: (1) a fragment of a bullet casing found by police under McGee's bed; (2) a hole in a door of his bedroom; and (3) items of black clothing taken by officers from McGee's closet.

> "Any evidence is relevant which logically tends to prove or to disprove a material fact which is at issue in the case, and every act or circumstance serving to elucidate or to throw light upon a material issue or issues is relevant." [Cits.] The trial court has great discretion to determine relevancy and materiality of evidence, and admission is favored in doubtful cases.

*Crozier v. State*, 263 Ga. 866 , 867 (2) (440 SE2d 635) (1994). While there was evidence that the bullet casing came from a weapon other than the one used in the homicide, the photograph was properly admitted as a circumstance of the crime scene and of McGee's arrest. See generally *Jung v. State*, 237 Ga. 73 (1) (226 SE2d 599) (1976); *Ashley v. State*, 160 Ga. App. 325 (2) (287 SE2d 321) (1981). The photograph of the hole in the door was relevant to whether, as the downstairs neighbor testified, there had been a struggle between McGee and the victim, and would bear on McGee's defense of accident.

The black items of clothing were taken from McGee's closet by the investigating officers, laid out and photographed. There is no indication that they played a role in the crime or had any bearing on the events leading up to his arrest. But defense counsel had wide latitude in cross-examining the investigator concerning the circumstances surrounding the making of the photograph. We cannot conclude that the photograph was so inflammatory as to deny McGee a fair trial, even if it may have incidentally placed his character in issue. Accordingly, we find no reversible error. *Jung*, supra.

5. McGee takes issue with the admission of certain hearsay statements made by Dula concerning McGee's threats on her life. These include Dula's statements to (1) her boyfriend, Samuel Mualen; (2) her father; and (3) her friend, Tammy Turner. The State responds that the evidence was admissible under the "necessity" exception in OCGA § 24-3-1 (b). We agree.

Two prerequisites must be established. *Roper v. State*, 263 Ga. 201, 202 (2) (429 SE2d 668) (1993). The first, necessity, is satisfied "since the victim, who is now unavailable as a witness because she is deceased, made the statement[s]." Id. As for the second prerequisite, "particularized guarantees of trustworthiness," id., "the declaration of the decedent is admissible when it is coupled with circumstances which attribute verity to it." Id.

Dula's statements to her father and to her boyfriend were entirely consistent, and were corroborated by McGee's own admissions to these individuals. Tammy Turner testified that she and the victim attended college together, worked part-time together, and were best friends. She described their relationship: "She was like my younger sister. She looked up to me and I looked out for her." As in *Roper*, Dula's hearsay statements to her close friend, Tammy Turner, "were made by the victim to a [close friend] in whom she placed great confidence and to whom she turned for help with her problems." Id. at 203. Under the totality of the circumstances, the hearsay statements contained sufficient indicia of trustworthiness and were admissible.

*Judgment affirmed. All the Justices concur, except Benham, C. J., and Hunstein, J., who concur specially as to Division 2.*

HUNSTEIN, Justice, concurring specially.

I respectfully disagree with the majority's holding in Division 2 that there was an insufficient probative connection between McGee's conduct towards his former girl friend and the charged crime so that it was error by the trial court to admit the prior act evidence. This is not an instance in which the trial court found that the prior act evidence was " 'so attenuated and dissimilar as to lack relevancy.' " Majority opinion at p. 563. Rather, the trial court here, after con-

ducting the hearing required by Uniform Superior Court Rule 31.1, ruled the prior act evidence admissible. Although the majority's opinion correctly acknowledges the two conditions required for the admissibility of prior act evidence, the majority fails to recognize that in reviewing the admissibility of such evidence, the correct focus of the appellate court must be on the *similarities* between the prior act and charged crime, not upon the differences. *Farley v. State*, 265 Ga. 622, 624 (458 SE2d 643) (1995). The similarities here show that in each case appellant would harass and threaten a woman with whom he was formerly sexually and emotionally involved, obviously with the intent to do violent injury; that in each case he would threaten not only the woman but also the man with whom she had subsequently become involved; and that he made these threats indifferent to any assistance the woman might obtain from the police or courts. I would consider this evidence admissible as relevant to prove McGee's disposition, course of conduct, and bent of mind toward resolving disputes arising from a failed relationship by threatening violent injury to his former female partner. See, e.g., *Ward v. State*, 262 Ga. 293 (2) (417 SE2d 130) (1992); *Moore v. State*, 207 Ga. App. 897 (1) (429 SE2d 340) (1993). That the former girl friend was not murdered or physically injured did not make the prior act so dissimilar that it had no relevance to the issues in the trial of the case. See id. Therefore, I can concur only in the judgment in Division 2.

I write also to note the inconsistency between the holding in Division 5 of the majority's opinion and the recent holding in *Dix v. State*, 267 Ga. 429 (2) (479 SE2d 739) (1997) regarding the trustworthiness of evidence under the necessity exception to the hearsay rule. The majority here summarily affirms the admission of statements the victim made to her boyfriend, father, and a friend " 'in whom she placed great confidence' " although these statements, had they been made by the victim to her attorney within the confines of the attorney-client privilege, would have been deemed inherently untrustworthy by the court in *Dix* unless a contrary conclusion was demonstrated by other evidence unrelated to the making of the statements. From this I can only conclude that the majority is more willing to believe a woman will lie to her lawyer than to a lover, parent, or friend.

I am authorized to state that Chief Justice Benham joins in this special concurrence.

DECIDED FEBRUARY 3, 1997 —
RECONSIDERATION DENIED FEBRUARY 28, 1997.

*Duana R. Sanson,* for appellant.

*J. Tom Morgan, District Attorney, Robert M. Coker, Assistant District Attorney,* for appellee.