[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15153
Non-Argument Calendar
_____

D.C. Docket No. 8:09-cv-02485-JDW-TBM

PETER A. BARRETT,

Petitioner-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellees.
_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(August 25, 2015)

Before HULL, JORDAN and JILL PRYOR, Circuit Judges.

PER CURIAM:

Petitioner-appellant Peter A. Barrett ("Barrett") appeals the district court's order denying his petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. After a review of the record and the parties' briefs, we affirm.

## I. FACTUAL BACKGROUND

In the early morning hours of February 2, 2001, Barrett killed his roommate, Kenneth Gonzalez. Detective Paul Rockhill conducted two separate interviews of Barrett on the day of the murder and later prepared an official police report of the incident. The report included numerous statements made by Barrett both before and during his two interviews on February 2, 2001.

A grand jury subsequently charged Barrett with first-degree murder, in violation of Florida Statute § 782.04(1). Specifically, the grand jury alleged that Barrett killed Gonzalez with "premeditated design" and by striking him with a deadly weapon—a baseball bat.

Barrett proceeded to trial. The State moved in limine to prevent the defense from introducing into evidence Barrett's statements contained in Detective Rockhill's report, arguing that they would constitute hearsay. The trial court sustained the objection.

During the three-day trial, defense counsel Deborah Goins sought to convince the jury to return a verdict of not guilty based on self-defense or, in the

2

alternative, to convict Barrett of a lesser-included offense because the killing was not premeditated.

In the defense's case-in-chief, Barrett took the stand and admitted to killing Gonzalez. As we explain below, the State impeached several areas of Barrett's testimony during cross-examination and in the State's rebuttal case through the testimony of Detective Rockhill. Additionally, as further explained below, defense counsel Goins affirmatively responded to these areas of impeachment. However, Goins did not introduce Detective Rockhill's police report containing Barrett's prior statements for purposes of rehabilitation or proffer the police report for the record.

On October 25, 2001, the jury convicted Barrett of first-degree murder. The state court sentenced Barrett to life in prison without the possibility of parole. The Florida District Court of Appeal affirmed Barrett's conviction and sentence, Barrett v. State, 862 So. 2d 44, 45 (Fla. Dist. Ct. App. 2003), and the Florida Supreme Court denied Barrett's petition for review, Barrett v. State, 873 So. 2d 1222 (Fla. 2004) (table).

## II. PROCEDURAL HISTORY

### A.    Post-Conviction Proceedings in State Court

On October 6, 2006, Barrett filed a pro se motion for post-conviction relief, pursuant to Florida Rule of Criminal Procedure 3.850. Barrett argued that his trial

3

counsel was ineffective for, inter alia, failing to introduce some of the statements Barrett made to Detective Rockhill to rehabilitate Barrett and show that he made prior statements that were not substantially different from his trial testimony.

The state post-conviction court denied Barrett's Rule 3.850 motion.  Barrett moved to reconsider, arguing, inter alia, that the post-conviction court failed to address his claim that Goins was ineffective for failing to introduce the prior consistent statements he made to the police.  The state post-conviction court denied the motion, finding that it had "adequately addressed" Barrett's allegations.

Barrett appealed, but the state appellate court affirmed the denial in a summary order.  Barrett filed a motion for rehearing, which was also denied.

**B.    Filing of Barrett's § 2254 Petition in District Court**

On December 7, 2009, Barrett filed pro se a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, in the United States District Court for the Middle District of Florida.

Barrett subsequently filed an amended petition, asserting three claims. Relevant to this appeal, Barrett's amended petition alleged that defense counsel Goins was ineffective for not introducing statements he made to police on the day of the murder to show they were not inconsistent with his trial testimony.

**C.    Initial Denial of Barrett's Petition and Subsequent Motion to Amend or Alter the Judgment**

On November 19, 2012, the district court denied Barrett's petition.  As to Barrett's contention that his trial counsel was ineffective for failing to introduce his prior statements to police as rehabilitation, the district court noted that Barrett did not provide a copy of those statements to compare with his trial testimony or "cite any particular portion of his prior statements to the police to support his claim." The district court thus concluded that, "[a]bsent evidentiary support, [Barrett] cannot sustain his ineffective assistance claim."  The district court further explained that, even assuming there was no inconsistency between Barrett's statements to police and his trial testimony, Barrett had failed to overcome the presumption that his trial counsel's decision not to introduce Barrett's statements was anything other than trial strategy.

Barrett moved to alter or amend the judgment, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.  The district court granted Barrett's Rule 59(e) motion.  The district court noted that prior consistent statements made by Barrett might have been admissible under Florida law and that the record was inconclusive as to whether Barrett was prejudiced by his trial counsel's allegedly deficient performance.  Accordingly, the district court granted Barrett's Rule 59(e) motion, scheduled an evidentiary hearing, and appointed counsel.

**D.      Evidentiary Hearing in District Court**

At the evidentiary hearing, Barrett submitted into evidence a copy of Detective Rockhill's report containing his prior statements, which he argued were consistent with his trial testimony.

According to the report, Barrett told police that he met Gonzalez on or about December 26, 2000.  However, the police report states that "[s]ome weeks later," in "approximately mid December," Gonzalez tried to "take over" the apartment and stopped paying rent.  Separately, and following intervening text, the report also states that "[s]ometime in late December[,] the victim forcibly held the defendants [sic] hand and burned the palm of his hand with a cigarette."

Also relevant to this appeal, the police report states that Barrett told police he "buil[t] up anger" due to Gonzalez's behavior.  The report indicates that Barrett told police he was angry at Gonzalez on the morning before the murder. Specifically, the report notes that in the early morning hours the day before the murder, Gonzalez took Barrett's dog for a walk, Barrett then heard the dog yelp, and Gonzalez subsequently told Barrett the dog ran away.

Barrett testified that he reviewed the police report with defense counsel Goins, who said it was Barrett's best evidence and that she intended to introduce it into evidence to corroborate his testimony at trial.  Barrett testified that, although

6

Goins tried to introduce the report prior to trial, she never re-attempted to introduce it after the State impeached his testimony.

Defense counsel Goins also testified at the evidentiary hearing.  Goins stated that she had been an attorney since 1982 and had represented approximately 56 homicide defendants at trial.  As to the police report in question, Goins testified that there were "many things in this report" that she did not want the jury to have, including several statements Barrett made to police that contradicted some of his trial testimony.  Furthermore, Goins testified, "Barrett had already made it clear [in his trial testimony] as to his position on each of these issues" on which the State impeached him, and there was thus "no reason to put the police report in" evidence.

## E.    District Court Denies Barrett's § 2254 Petition

On October 10, 2013, the district court denied Barrett's § 2254 petition as to his claim that defense counsel Goins was ineffective for failing to introduce his prior—and allegedly consistent—statements.[1]  The district court concluded that Goins's performance was "objectively reasonable" and that Barrett failed to satisfy

---

[1]The district court considered Barrett's claim de novo and did not apply any deference to the state court's rejection of his Rule 3.850 petition.

the deficient-performance prong of the Strickland[2] test for ineffective assistance of counsel.

The district court noted that Goins attempted to introduce the police report, which contained Barrett's prior statements, but her attempt was rejected by the trial court judge. The district court also observed that Goins elicited (1) several of Barrett's prior statements from Detective Rockhill on cross-examination in the State's rebuttal case and (2) multiple helpful admissions, which related to the areas of impeachment, from Detective Rockhill. In light of that evidence, the district court found that Barrett failed to overcome the presumption that Goins's trial performance was not deficient.

Barrett timely appealed. This Court granted a certificate of appealability on the issue of whether Barrett "was denied his right to effective assistance of counsel when his trial counsel failed to introduce or proffer evidence of prior consistent statements after the State impeached his testimony."

### III. GOVERNING LAW

A.    **Standard of Review**

We review de novo a district court's order granting or denying a petition for a writ of habeas corpus. See McNair v. Campbell, 416 F.3d 1291, 1297 (11th Cir. 2005). We review the district court's factual findings for clear error. Id. We

---

[2]Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984).

review de novo a district court's conclusion as to whether trial counsel was ineffective because it is a mixed question of law and fact.[3]  See id.

The scope of our review in cases where a district court denies a habeas petition "is limited to the issues specified in the certificate of appealability." McClain v. Hall, 552 F.3d 1245, 1254 (11th Cir. 2008) (quotation marks omitted and alterations adopted).

## B.    Strickland's Two-Pronged Test

Under the Sixth Amendment, criminal defendants have the right to effective assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 685–86, 104 S. Ct. 2052, 2063 (1984).  To prove that counsel was ineffective, a defendant must show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense.  Id. at 687, 104 S. Ct. at 2064.

As to Strickland's first prong, a defendant "must show that counsel's representation fell below an objective standard of reasonableness."  Harrington v. Richter, 562 U.S. 86, 104, 131 S. Ct. 770, 787 (2011) (quotation marks omitted). We apply "a strong presumption that counsel's representation was within the wide range of reasonable professional assistance."  Id. (quotation marks omitted).  A

---

[3]The parties contest whether the district court should have applied the additionally deferential standards of 28 U.S.C. § 2254(d) in this case.  The State argues that § 2254(d) deference is due to the state courts' rejection of Barrett's claim, while Barrett argues that such deference would be inappropriate here.  We need not decide this issue.  Assuming Barrett is correct that § 2254(d) deference does not apply, we nonetheless conclude that the district court properly denied his § 2254 petition.

9

court cannot adjudge counsel's performance to be ineffective "as long as the approach taken might be considered sound trial strategy." Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc) (quotation marks omitted). This presumption of reasonableness is even stronger where we examine the performance of experienced trial counsel. Id. at 1316. A defendant challenging counsel's failure to take an action at trial must establish that "no competent counsel" would have declined to take the action. See Chandler, 218 F.3d at 1315 & n.17.

As to Strickland's prejudice prong, a defendant must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S. Ct. at 2064. Specifically, a defendant must establish that there is a "reasonable probability" that, but for counsel's errors, the result of the proceeding would have been different. Id. at 694, 104 S. Ct. at 2068.

Barrett bears the burden of proof on both prongs of his ineffective-counsel claim. See Johnson v. Alabama, 256 F.3d 1156, 1176 (11th Cir. 2001). If we conclude that Barrett failed to carry his burden as to one of the two prongs, we need not address the other. See Strickland, 466 U.S. at 697, 104 S. Ct. at 2069.

## IV. DISCUSSION

Barrett contends that defense counsel Goins performed deficiently as to the State's impeachment of five separate portions of Barrett's testimony.[4]  Barrett argues that Goins's failure to introduce or proffer his prior statements made to Detective Rockhill prejudiced him because, during deliberations, the jury requested "Barrett's testimony if possible" and "his statement to the police."[5]

We review the record as to each of the five areas of impeachment.  We then consider whether Barrett has met his two-prong burden under Strickland as to defense counsel Goins's performance with regard to each area of impeachment. Throughout this analysis, we keep in mind that Goins was a practicing attorney for nearly two decades at the time of Barrett's trial and has represented more than 50 homicide defendants at trial.  Accordingly, our presumption that Goins's trial conduct was reasonable is even stronger than in the usual case because of her extensive experience.  See Chandler, 218 F.3d at 1316.

---

[4]Although Barrett lists six areas on which the State impeached his testimony, two of Barrett's listed areas—with regard to (1) where Gonzalez was standing immediately prior to the murder and (2) whether Gonzalez lunged at Barrett—arise out of the same portion of Barrett's testimony and are properly reviewed as a single area of impeachment.

[5]Upon the agreement of Barrett's counsel and the State, the trial court judge instructed the members of the jury to rely on their memories.

**A.    Barrett's Comments about Gonzalez Burning Him with a Cigarette**

Barrett contends that defense counsel Goins was ineffective for failing to introduce or proffer Barrett's prior consistent statements as to when Gonzalez burned his hand with a cigarette.

On direct examination, defense counsel Goins elicited testimony from Barrett that Gonzalez had extinguished a cigarette on Barrett's right hand and that Barrett showed the still-visible mark to Detective Rockhill on the day of the murder (February 2, 2001).  During the State's cross-examination of Barrett, the State's prosecutor asked whether Barrett told Detective Rockhill that Gonzalez burned Barrett's hand with the cigarette in late December of 2000.  Barrett testified that he did not tell Detective Rockhill that the burn was in December of 2000.  Barrett testified that the burn occurred in January of 2001.

On direct examination in the State's rebuttal case, Detective Rockhill testified that Barrett told him that Gonzalez burnt his hand with a cigarette some time in December of 2000.

But on cross-examination, defense counsel Goins successfully elicited an admission from Detective Rockhill that he saw a mark on Barrett's right palm on

12

the day of the murder (February 2, 2001), which was consistent with Barrett's testimony.[6]

This review of the record establishes that defense counsel Goins affirmatively responded to the State's impeachment of Barrett's testimony as to the timing of the cigarette burn. Specifically, it appears that Goins elicited Detective Rockhill's testimony that the burn mark was visible in February of 2001 to call into doubt Detective Rockhill's testimony about the burn occurring in December of 2000. Furthermore, Barrett has failed to identify any specific prior consistent statement (in the police report or anywhere else) that he made that Goins could have introduced. Accordingly, Barrett has failed to establish that Goins's performance as to the cigarette burn issue was objectively unreasonable. See Harrington, 562 U.S. at 104, 131 S. Ct. at 787.

Barrett attempts to overcome this failure by arguing that Goins's performance was unreasonable as to the timing of the cigarette burn because she failed to impeach Detective Rockhill by introducing two statements in Detective Rockhill's report that Barrett alleges were internally inconsistent. The two

---

[6]Counsel Goins also continued her cross-examination by asking Detective Rockhill what "the significance of the cigarette burn" was. The State objected to the question as being outside the scope of rebuttal. Defense counsel Goins argued that she "should be able . . . to ask [Detective Rockhill] whether the cigarette [burn] was there" in February because the State "asked about the cigarette and the timingThe trial court instructed counsel Goins to move on to her next question. Barrett has failed to identify any prior consistent statement (in the police report or anywhere else) that Goins could have proffered in response to the trial court's evidentiary ruling.

13

statements are: (1) that Barrett told Detective Rockhill that he met Gonzalez on December 26, 2000, and (2) that Gonzalez attempted to "take over" the apartment "[s]ome weeks later" in "mid December."

As an initial matter, Barrett's contention that Goins should have highlighted these inconsistences to impeach Detective Rockhill strays from the issue on which we granted a certificate of appealability: whether Goins should have introduced or proffered Barrett's prior statements that were consistent with his trial testimony. Accordingly, this argument is beyond the scope of our review. See McClain, 552 F.3d at 1254.

Regardless, assuming we should consider this argument, Barrett's contention lacks merit. Detective Rockhill's report stated that Gonzalez burned Barrett with a cigarette "[s]ometime in late December." The report did not specify that the cigarette burn occurred at the same time Gonzalez attempted to the "take over" the apartment. So any internal inconsistency in these statements in Detective Rockhill's report was not tied to the timing of the cigarette burn. At a minimum, the line of collateral impeachment now suggested by Barrett thus would have been an uncertain one, at best, and the failure to pursue it was not deficient performance.

In the alternative, we also conclude that Barrett has failed to establish a "reasonable probability" that the outcome of his trial would have been different had Goins introduced these two statements about Barrett meeting Gonzalez and

14

Gonzalez taking over the apartment.  See Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

**B.    Barrett's Comments about Building Up Anger Toward Gonzalez**

Barrett also contends that defense counsel Goins was ineffective for failing to introduce Barrett's prior consistent statements as to whether Barrett was building up anger toward Gonzalez before the murder.

On direct examination in the State's rebuttal case, Detective Rockhill testified that Barrett said he had built up anger toward Gonzalez prior to the murder.

Although Barrett contends that defense counsel Goins's performance was deficient because she failed to introduce his prior statements, Barrett has failed to identify any prior consistent statement—other than the statement recounted by Detective Rockhill—that Barrett made as to whether he had built up anger toward Gonzalez.  And we can find no such statement in Detective Rockhill's police report or anywhere else in the record.  Accordingly, we conclude that Goins's performance as to this issue was not objectively unreasonable.  See Harrington, 562 U.S. at 104, 131 S. Ct. at 787.

15

**C.    Barrett's Comments about His Physical Altercation with Gonzalez**

Barrett next contends that defense counsel Goins was ineffective for failing to introduce Barrett's prior consistent statements as to where Gonzalez was standing prior to the murder and whether Gonzalez had lunged at Barrett.

On direct examination by Goins, Barrett testified that he had two separate arguments with Gonzalez on the morning of the murder.  Barrett testified that the second argument led to a physical confrontation culminating in Gonzalez's death.  According to Barrett, he initially walked away from that second argument.  Specifically, Barrett testified that he went into the bedroom, shut the door, grabbed a bat from under his bed, and swung the bat against the door.  According to Barrett, the door then flung open, and Gonzalez lunged at Barrett.  At that point, Barrett testified, he began hitting Gonzalez "in the shoulder area and the head area" with the bat.

In the State's rebuttal case, Detective Rockhill testified that Barrett told him that Gonzalez was standing in the doorway of the bedroom when Barrett began hitting Gonzalez with the bat.  According to Detective Rockhill, Barrett never said that Gonzalez came into his room or lunged at him.

Here, Barrett's only relevant prior statement in the record is a single sentence from Detective Rockhill's report: "The victim approached the defendants [sic] bedroom door and the defendant states he struck the victim around the head or

16

right shoulder area."  Notably, this statement is more consistent with Detective Rockhill's testimony than it is with Barrett's testimony.

Accordingly, Barrett has clearly failed to establish that "no competent counsel" would have chosen not to introduce this statement in an attempt to rehabilitate Barrett.  See Chandler, 218 F.3d at 1315 & n.17.  Likewise, Barrett has failed to establish a "reasonable probability" that the outcome of his trial would have been different had Goins introduced or proffered this statement.  Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

## D.    Barrett's Comments about Dedicating a Bible to Gonzalez

Barrett also contends that defense counsel Goins was ineffective for failing to introduce his prior consistent statements as to Barrett's dedication of a Bible to Gonzalez on the morning of the murder.

Barrett testified that, after the first argument, the two men put their differences aside, and Barrett suggested that they read a Bible together.  Barrett further testified that he retrieved a Bible from his bedroom and began reading from the Bible to Gonzalez.  After reading several verses, Barrett testified, he decided to give the Bible to Gonzalez and wrote a dedication to Gonzalez on the back page of the Bible.

In the State's rebuttal case, Detective Rockhill testified that Barrett did not mention the Bible until Barrett's second interview.  According to Detective

17

Rockhill, Barrett said he dedicated the Bible when Gonzalez was unconscious and motionless, after Barrett beat Gonzalez following the second argument.

On cross-examination by defense counsel Goins, Detective Rockhill testified that Barrett said he dedicated the Bible after Gonzalez had died. Defense counsel Goins then elicited an admission from Detective Rockhill that Barrett did not specify whether Gonzalez was dead when Barrett dedicated the Bible, but stated only that Gonzalez was motionless and not making any noises.

Considering this record, it is clear that defense counsel Goins attempted to rehabilitate Barrett through her effective impeachment of Detective Rockhill on cross-examination. Furthermore, Barrett has again failed to identify any prior consistent statement that Goins arguably should have introduced to impeach Detective Rockhill's testimony that Barrett said he dedicated the Bible after Gonzalez was unconscious, rather than before the physical altercation. Goins's performance as to the issue of the Bible, therefore, was not objectively unreasonable.[7] See Harrington, 562 U.S. at 104, 131 S. Ct. at 787.

---

[7]Barrett also contends that Goins was ineffective for failing to introduce evidence that Barrett did not mention the Bible initially because the police did not ask him about the Bible in the first interview. However, we readily conclude that any such failure does not constitute "objectively unreasonable" performance, see Harrington, 562 U.S. at 104, 131 S. Ct. at 787, and that there is no "reasonable probability" that the outcome of the trial would have been different had Goins introduced evidence that the police did not specifically ask Barrett about the Bible in the first interview, see Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

18

### E.    Barrett's Comments about a Broken Window and a Stolen VCR

Finally, Barrett contends that defense counsel Goins was ineffective for failing to introduce Barrett's prior consistent statements as to whether someone broke into the apartment and stole a VCR in the days before the murder.

During the defense's case-in-chief, the State asked Barrett on cross-examination whether he told Detective Rockhill that the apartment had a broken window because someone broke in and stole a VCR.  Barrett testified that he did not tell Detective Rockhill that, and that no one had broken into the apartment.

On direct examination in the State's rebuttal case, Detective Rockhill testified that Barrett told him that someone stole a VCR from the apartment and exited the apartment through a window.  On cross-examination, defense counsel Goins then elicited from Detective Rockhill an admission that he was not sure whether the window was broken on the day of the murder.  Detective Rockhill also admitted that he did not write anything in his police report about Barrett mentioning a broken window or stolen VCR.

Based on our review of the record, it is clear that defense counsel Goins affirmatively responded to the State's impeachment of Barrett's testimony on this issue by highlighting facts that could raise doubts about the credibility of Detective Rockhill's testimony.  Furthermore, Barrett has again failed to identify a single prior consistent statement he made that would have rehabilitated him on this point,

19

and we cannot find any such statement in the record.  Goins's performance as to

this impeachment of Barrett, therefore, was not objectively unreasonable.  See id.

## V. CONCLUSION

For all the foregoing reasons, we affirm the district court's order denying

Barrett's § 2254 petition.

**AFFIRMED.**